**Elmer G. BERRY, Plaintiff-Appellant,**

v.

**Richard SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 582, Docket 81–6182.**

United States Court of Appeals, Second Circuit.

Argued Jan. 28, 1982.

Decided March 18, 1982.

---

Jerome J. Niedermeier, Asst. U. S. Atty., Rutland, Vt. (George W. F. Cook, U. S. Atty., D. Vt., Peter W. Hall, Asst. U. S. Atty., Rutland, Vt., of counsel), for defendant-appellee.

Dan Jerman, Rutland, Vt. (Vermont Legal Aid, Inc., Rutland, Vt., of counsel), for plaintiff-appellant.

Before MESKILL, CARDAMONE and PIERCE, Circuit Judges.

PER CURIAM:

Elmer G. Berry appeals from the judgment of the United States District Court for the District of Vermont, James S. Holden, Chief Judge, upholding the denial by the Secretary of Health and Human Services of Berry's application for disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–31, 1381–85. Although the reasoning of the Secretary with respect to one issue might have been more clearly articulated, we find that his decision was supported by substantial evidence and we accordingly affirm.

## I.

Appellant Berry is a 36 year old male who attended public school in St. Johnsbury, Vermont, until the third grade and then lived at the Brandon (Vermont) Training School until he was nineteen years old. From 1965 to 1975, he held various manual jobs, including car washer, dishwasher, and ride operator and worker for a travelling carnival, from which he earned an average of $2800 per year. In 1975, apparently due to his father's illness, Berry returned to Vermont from Florida where he had been working as a carnival ride operator. In October 1975, he worked as a dishwasher in Rutland, Vermont, but was laid off after two weeks due to lack of work and his inability to keep up with his job. Berry has not been employed since that time.

In October 1977, Berry filed an application for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–31, and an application for Supplemental Security Income ("SSI") based on disability pursuant to Title XVI of the Act, 42 U.S.C. §§ 1381–85. Berry claimed total disability due to mental retardation. His applications were initially denied, his requests for rehearing were denied, and after a *de novo* hearing on September 14, 1978, an Administrative Law Judge ("ALJ") filed a detailed decision finding that Berry was not disabled within the meaning of the Act. Berry did not seek review of that decision.

On September 20, 1979, appellant filed another application for SSI and disability insurance benefits, alleging total disability due to "chest problems, trouble with left foot, constant headaches, [and] brain damage." The Secretary denied his application and his request for reconsideration. On July 15, 1980, the same ALJ who heard Berry's 1977 application conducted a *de novo* hearing at which Berry was represented by a paralegal from Vermont Legal Aid. Berry provided the sole oral testimony; the primary written evidence consisted of medical reports by an examining psychologist, an examining psychiatrist, and an examining orthopedist, and a note from appellant's treating physician. By decision dated August 24, 1980, the ALJ found that although Berry had impairments of inadequate personality and borderline intelligence, he had the residual functional capacity to perform work in non-stressful situations and, thus, was able to perform his past relevant work. Berry's request for review was denied by the Appeals Council of the Social Security Administration.

Thereafter, Berry filed in the federal district court for Vermont an application for review of the Secretary's decision pursuant to 42 U.S.C. § 405(g). By Memorandum of Decision dated August 6, 1981, Chief Judge Holden affirmed the Secretary's decision, and on the following day the judgment from which Berry appeals was entered.

## II.

For purposes of both SSI and disability insurance eligibility, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, en-

gage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The claimant bears the initial burden of showing that his impairment prevents him from returning to his prior type of employment. *Jock v. Harris*, 651 F.2d 133, 135 (2nd Cir. 1981). If he meets that burden, the burden shifts to the Secretary to prove the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical and mental capabilities, but also his age, his education, and his experience and training. *Campbell v. Secretary of the Department of Health and Human Services*, 665 F.2d 48, 51 (2nd Cir. 1981); *Dousewicz v. Harris*, 646 F.2d 771, 772 (2nd Cir. 1981); *Parker v. Harris*, 626 F.2d 225, 231 (2nd Cir. 1980).

The applicable regulations promulgated by the Secretary set forth a straightforward five-step sequence to be utilized in evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920 (1981).[1] First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is

whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

On review, we may only set aside a determination which is based upon legal error or not supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2nd Cir. 1981); *Dousewicz*, 646 F.2d at 773. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

### III.

Our review of the Secretary's decision will follow the sequential approach prescribed by the Secretary's regulations and consistent with the Act. It is undisputed that Berry was not employed at the time of his application. As to the second inquiry, the ALJ expressly found that appellant has two impairments: inadequate personality and borderline intelligence.

As to the third step, regarding listed impairments, appellant claimed below and continues to claim that he suffers from various mental disorders, including a chronic brain syndrome, a functional nonpsychotic disorder, and mental retardation, which are listed in Appendix 1 of Subpart P of Part 404, 20 C.F.R., and set forth in the margin.[2] The ALJ rejected these conten-

---

1. The present regulations were promulgated and became effective on August 20, 1980, 45 Fed.Reg. 55566, four days before the ALJ's decisions herein. The ALJ's use of the old regulations, however, is insignificant since the prior and present versions are substantially identical. In any event, on review we must apply the present regulations. *Decker v. Harris*, 647 F.2d 291, 294 n.2 (2nd Cir. 1981); *Vega v. Harris*, 636 F.2d 900, 903 (2nd Cir. 1981).

2. The following categories of mental impairments are prefaced with a lengthy discussion

tions, stating: "This Judge has reviewed all of the material medical evidence and the claimant's testimony and concludes that this claimant's conditions were not attended by clinical findings that meet or equal in severity the requirements of Appendix 1 [of the relevant regulations]." Unfortunately, the ALJ's otherwise thorough opinion failed to set forth a specific rationale in support of the foregoing conclusion. Nonetheless, the absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence.

To meet the requirements of the impairments listed in §§ 12.02 and 12.04, the claimant must present reports from psychiatrists and psychologists, based upon clinical findings, which show, *inter alia*, that he presently has "seriously impaired ability to relate to other people." In this regard, the examining psychiatrist found appellant "was courteous and cooperative, was oriented for place, person and time, and showed no evidence of delusions or hallucinations" and reported that Berry told him he had no trouble getting along with his bosses. The psychiatrist concluded that "[t]he most suitable diagnosis is probably inadequate personality in a person of borderline intelligence and possible brain damage." The examining psychologist reported that Berry related to him "in a friendly manner and his emotional responses seemed appropriate." The psychologist reported that appellant's Minnesota Multiphasic Personality Inventory indicated he was in a group of people who *tend to* withdraw from social contact. The ALJ found that Berry was "pleasant and comfortable" at his hearing, that his comprehension was adequate, and though his "input was lethargic, dull, and sometimes confusing", he "responded to

concerning the determination of mental disorders.

"12.02 *Chronic brain syndromes* (organic brain syndromes). With both A and B:
A. Demonstrated deterioration in intellectual functioning, manifested by persistence of one or more of the following clinical signs:
1. Marked memory defect for recent events; or
2. Impoverished, slowed, perseverative thinking, with confusion or disorientation; or
3. Labile, shallow, or coarse effect;
B. Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.
"12.04 *Functional nonpsychotic disorders* (psychophysiologic, neurotic, and personality disorders; addictive dependence on alcohol or drugs). With both A and B:
A. Manifested persistence of one or more of the following clinical signs:
1. Demonstrable and persistent structural changes mediated through psychophysiological channels (e.g., duodenal ulcer); or
2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or
3. Persistent depressive affect with insomnia, loss of weight, and suicidal pre-occupation; or
4. Persistent phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; or
5. Persistent compulsive, ritualistic behavior; or
6. Persistent functional disturbance of vision, speech, hearing, or use of a limb with demonstrable structural or trophic changes; or
7. Persistent, deeply ingrained, maladaptive patterns of behavior manifested by either:
   a. Seclusiveness or autistic thinking; or
   b. Pathologically inappropriate suspiciousness or hostility;
B. Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.
"12.05 *Mental retardation.* As manifested by:
A. Severe mental and social incapacity as evidenced by marked dependence upon others for personal needs (e.g., bathing, washing, dressing, etc.) and inability to understand the spoken word and inability to avoid physical danger (fire, cars, etc.) and inability to follow simple directions and inability to read, write, and perform simple calculations; or
B. IQ of 59 or less (see 12.00B4); or
C. IQ of 60 to 69 inclusive (see 12.00B4) and a physical or other mental impairment imposing additional and significant work-related limitation of function."

questions in a relatively appropriate manner." Given the foregoing evidence and the ALJ's adequately supported finding that Berry was able to work in non-stressful jobs, *see infra* at 1785, we can reasonably infer that the ALJ found that §§ 12.02 and 12.04 were inapplicable to Berry due to his failure to prove a "*seriously* impaired ability to relate to other people." [3] This finding is supported by the substantial evidence outlined above.

■ Berry also does not meet the clinical requirements of § 12.05. As to part A, there is nothing to indicate that appellant is unable to understand the spoken word or unable to avoid physical dangers such as cars or fires. As to parts B and C, appellant's IQ scores are higher than those specified therein. Thus, the ALJ's implicit finding that appellant is not mentally retarded, as defined by § 12.05, is supported by substantial evidence.[4]

■ Before turning to the final step of our review we wish to note that here, in spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence. Cases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ. In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision.

*See SEC v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947); *National Geographic Society v. District Unemployment Compensation Board*, 438 F.2d 154, 159–61 (D.C.Cir.1970). Thus, in future cases in which the disability claim is premised upon one or more listed impairments of Appendix 1, the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment.

■ Turning finally to the fourth step of the eligibility determination, we find supported by substantial evidence the ALJ's determination that Berry was able to return to his prior type of work. In addition to the medical evidence presented by the examining psychiatrist and psychologist, the ALJ properly considered Berry's testimony regarding his alleged chest pain and discomfort (which the ALJ found "not entirely credible"), and also considered Berry's age and work experience. *See Miles v. Harris*, 645 F.2d 122, 124 (2nd Cir. 1981); *Parker v. Harris*, 626 F.2d 225, 231 (2nd Cir. 1980). Substantial evidence supported the ALJ's conclusion that Berry had the residual physical and mental capacity to perform work-related functions in non-stressful situations.[5] Since Berry's past work did not require working in stressful circumstances, the ALJ correctly concluded that Berry could perform that type of work.

The judgment is affirmed. No costs.

3. In *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947), the Supreme Court warned that in reviewing an administrative agency's decision, a court should not "be compelled to guess at the theory underlying the agency's action." Here, given the ALJ's express finding that appellant was able to perform work in a non-stressful environment, we do not engage in guesswork in inferring that, although appellant had an inadequate personality, the ALJ found that appellant's ability to deal with other people was not *seriously* impaired.

4. The ALJ did not err in rejecting a two sentence note from appellant's treating physician

which merely stated that Berry should be tested for mental retardation. Appellant adduced no evidence indicating the basis for the doctor's suggestion, and such a suggestion can hardly be deemed probative evidence of actual mental retardation.

5. Although the examining psychologist opined that Berry would probably be unable to return to his previous employment, his opinion was not binding on the ALJ, especially in light of the substantial evidence—including medical evidence—indicating Berry's ability to perform work in a non-stressful work environment.