Andrew GERNAVAGE, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health
and Human Services, Defendant.

No. 93 Civ. 6595 (PKL).

United States District Court,
S.D. New York.

April 24, 1995.

Sher, Herman, Bellone and Tipograph, P.C., New York City (Peter Tipograph, of counsel), for plaintiff.

Mary Jo White, U.S. Atty. for the S.D.N.Y., New York City (Linda A. Riffkin, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge:

This is an action brought by Andrew Gernavage ("Gernavage") under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to challenge a final determination by the Secretary of Health and Human Services (the "Secretary"), denying Gernavage's application for disability insurance benefits based on disability. Plaintiff now moves this Court to reverse the decision of the Secretary, and defendant cross-moves for a judgment on the pleadings, pursuant to Fed. R.Civ.P. 12(c). For the reasons stated below, defendant's motion is granted.

## BACKGROUND

### A. Procedural History

Gernavage filed an application for disability benefits on April 17, 1992. See Defendant's Memorandum of Law in Support of Her Motion for Judgment on the Pleadings ("Defendant Mem.") at 1. His application was denied, and his request for reconsideration was also denied. Id. Gernavage then requested a hearing, which was held on January 22, 1993 before Administrative Law Judge Mark J. Hecht (the "ALJ"). See Memorandum of Law to Support Plaintiff's Complaint for Relief Granting Social Security Benefits ("Plaintiff Mem.") at 2. In a decision dated February 18, 1993, the ALJ found that Gernavage was not disabled under the Social Security Act. Id. The decision of the ALJ became the final decision of the Secretary when, on July 28, 1993, the Appeals Council denied plaintiff's request for review. Defendant Mem. at 2. Plaintiff then filed the instant action.

### B. Factual History

Gernavage, who was 37 years old at the time of the Secretary's final decision, has a high school education and has taken three years of college. Plaintiff Mem. at 9. Prior to his accident, Gernavage worked as an elevator repair mechanic for thirteen years, and before his employment as an elevator mechanic, he worked unloading tractor-trailers. Id. Gernavage describes his job as an elevator repairman as requiring him to lift and carry heavy tools and other weighty objects and as further demanding a great deal of bending, crouching, and climbing. Gernavage alleges that he has been disabled since October 24, 1991, at which time he injured himself lining up a motor with two couplings. He claims disability due to injuries to his neck, back, and right shoulder. Defendant Mem. at 2.

### C. Medical History

Gernavage has been treated by Dr. Howard Finelli ("Finelli") since November 14, 1991. Defendant Mem. at 5. In a report to the Worker's Compensation Board, Finelli stated that when he examined plaintiff for

the first time, on November 14, 1991, he diagnosed internal derangement of the right shoulder, internal derangement of the cervical spine with radiculopathy and spasm, and he opined that plaintiff was totally disabled. Defendant Mem. at 5. Finelli examined plaintiff again on January 6, 1992, January 9, 1992, January 28, 1992, February 26, 1992 and March 27, 1992. On each occasion, he found derangement of the right shoulder with radiculopathy, spasm and degenerative joint disease, derangement of the cervical spine with pain and numbness of the right hand, and impingement syndrome of the shoulder. *Id.* In each report to the Worker's Compensation Board, Finelli opined that Gernavage was totally disabled and that his recovery was delayed by loss of function. *Id.*

In a report to the Worker's Compensation Board on April 28, 1992, Finelli noted a decreased range of motion of the right shoulder with no atrophy or other deficits. Defendant Mem. at 6. He reported that range of motion testing of the right shoulder revealed: abduction was 80 degrees out of a possible 150 degrees, adduction was 20 degrees out of 30, internal rotation was 25 degrees out of 40, and external rotation was 50 degree out of 90. He further reported that range of motion testing of the cervical spine revealed: lateral flexion was 25 degrees out of 45, flexion was 25 degrees out of 45, extension was 25 degrees out of 45, and rotation was 25 degrees out of 45 on each side. *Id.* Lastly, Finelli opined that Gernavage's abilities to lift, carry, push and pull were limited, but he noted no limitations with respect to standing, walking, or sitting. *Id.*

Dr. Daoud Karam ("Karam"), a specialist in physical medicine and rehabilitation, saw Gernavage for a consultative examination on July 11, 1992, at the request of the Office of Disability Determinations. Defendant Mem. at 6. Karam conducted his own battery of tests. This Court will not repeat all of Karam's findings, but notes that Karam's impression was that Gernavage had suffered cervical derangement with possible C–7 radiculopathy. *Id.* Karam opined that Gernavage's ability to do work-related activities was limited by cervical pain and irritation when heavy stress was applied to his right arm. *Id.* Karam did not note any limitations with respect to Gernavage's ability to sit, stand or walk. *Id.*

On September 25, 1992, at the request of Finelli, Dr. Morton Finkel ("Finkel") performed a consultative neurological examination of Gernavage. Defendant Mem. at 8. Finkel found: deep tendon reflexes were one-plus and equal; no Babinski's signs were present; temperature and touch sensations were present; vibration was decreased over the right second and third fingers; Gernavage's grip strength was 5/5 in each hand; and he had full range of motion of his upper extremities and his cervical spine. *Id.* Finkel's diagnosis was cervical radiculopathy, and he opined that Gernavage was totally disabled for his occupation. *Id.*

Dr. Anthony C. Milea ("Milea") completed a Worker's Compensation form in which he indicated that he examined Gernavage on November 25, 1992 and December 11, 1992. Defendant Mem. at 9. Milea's reports contained essentially the same information as Finelli's reports. *Id.*

Dr. Mindy Pfeffer ("Pfeffer"), a radiologist, reported on December 25, 1991, that plaintiff had undergone magnetic resonance imaging ("MRI") of the right shoulder and arm. Defendant Mem. at 9. The impression was degenerative hypertrophic changes of the acromioclavicular joints with associated impingement syndrome, grade I rotator cuff, compatible with tendinitis, no evidence of rotator cuff tear, and negative MRI of the right humerus. *Id.*

Pfeffer reported, on March 17, 1992, that Gernavage had undergone MRI of the cervical spine. Pfeffer's impression was straightening of the cervical spine compatible with muscle spasm; diffuse degenerative changes of the cervical spine from C3 through C7 with most severe changes at C5–C6; small subligamentous disc herniation at C3–4; degenerative bulging annulus at C4–5; chronic anterior and posterior disc protrusion at C5–6 in the midline and extending to the right with impingement on the spinal cord, compatible with chronic disc herniation and degenerative changes of the spine at C6–7, with focal disc herniation extending to the right of the midline. *Id.*

Dr. Joseph J. Gottesman reported, on July 15, 1992, that X-rays of Gernavage's right shoulder were negative, and that X-rays of the cervical spine showed degenerative disc disease at the C5–6 level. Defendant Mem. at 10.

Lastly, Gernavage's own testimony is that he is unable to sit for more than two hours; he can stand for only approximately two hours; he can only walk a distance of five to six blocks without a problem; he can carry up to 25 pounds for a short period; and he suffers numbness in his right hand. Plaintiff Mem. at 10. Gernavage also testified that he had taken Naprosyn and received injections of Cortisone and that these medications provided him with some relief from his pain. Defendant Mem. at 4. He further stated that his pain was less severe than it had been one and half years earlier. *Id.*

## DISCUSSION

### A. *Standard of Review*

■ There is no dispute between the parties as to the standard of review that this Court should employ. The Act provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Donato v. Secretary of Dep't of Health and Human Services*, 721 F.2d 414, 418 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225 (2d Cir.1980). Therefore, if this Court finds that there is substantial evidence supporting the Secretary's decision, the Secretary's decision must be upheld. This is true even if there is also substantial evidence for plaintiff's position. *See Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1982).

■ Substantial evidence in this context has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427 (citations omitted); *see also Donato*, 721 F.2d at 418; *Parker*, 626 F.2d at 231. The Secretary's findings are conclusive even when a reviewing court's independent analysis of the evidence may differ from the Secretary's analysis. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982), *cert. denied*, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983) ("factual issues need not have been resolved by the Secretary in accordance with what we conceive to be the preponderance of the evidence.") But the Court has a duty to scrutinize the record, and not to merely "rubber-stamp the decisions of the Secretary." *Lynn v. Schweiker*, 565 F.Supp. 265, 267 (S.D.Tex. 1983).

### B. *Burden of Proof*

■ Plaintiff has the burden of establishing that he is disabled within the meaning of the Act. He must demonstrate (1) that he is unable to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment is demonstrated by evidence supported by data obtained by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d), 1382(a)(3)(A); *Parker*, 626 F.2d at 230. Plaintiff also must prove that he cannot return to his prior occupation. *See Parker*, 626 F.2d at 231; *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). The Secretary must then prove, considering plaintiff's age, education, past work experience and medical disability, that there is alternative substantial gainful work in the national economy that plaintiff could perform. 42 U.S.C. § 423(d)(2)(A).

The Second Circuit established a five-step progression to facilitate the evaluation of disability claims.

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regula-

tions. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable·to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry,* 675 F.2d at 467. The claimant bears the burden as to the first four steps, while the Secretary must prove the final one. *Id.*

## C. *The Secretary's Determination*

■ The issue before this Court is whether there is substantial evidence for the Secretary's determination that Gernavage is capable of performing light work, and therefore is not disabled.[1] Plaintiff makes a strong argument that the available medical evidence supports a finding of complete disability. He highlights the many reports that forcefully illustrate his severe symptomatology, and emphasizes the extreme nature of his injuries. The Court notes that the ALJ's decision was likely a difficult one. This Court, however, need not decide either whether the Secretary's determination was accurate or whether this Court would have decided the matter the same way had it reached this

Court as an original matter. *See Rutherford,* 685 F.2d at 62. Rather, this Court's only function is to determine whether there is substantial evidence to support the Secretary's judgment. This Court finds that there is such substantial evidence.

This Court will only note the proof that constitutes the substantial evidence in support of the Secretary's finding because such proof is all that is necessary to require this Court to affirm the Secretary's decision.[2]

■ The Secretary applied the five-step test expounded in *Berry,* 675 F.2d at 467. First, the ALJ found that Gernavage had not engaged in substantial gainful activity since October 24, 1991. Defendant Mem. at 15. Second and third, the ALJ determined that Gernavage had severe chronic cervical and right shoulder pain syndrome and strain with disc pathology at C3–7, but that he did not have an impairment, or combination of impairments, listed in or medically equal to, a condition listed in Appendix 1 to 20 C.F.R. § 404, Subpart P.[3] *Id.* Plaintiff contends that his impairments meet the level of severity of, or are, at least, medically equivalent to, the vertebrogenic impairment described in Section 1.05(C) of the Listing of Impairments. *See* 20 C.F.R. § 404, Subpart P, Appendix 1.

Gernavage notes that the ALJ found that he suffers from severe musculoskeletal impairment and that he has severe chronic cervical and right shoulder pain syndrome and strain with disc pathology at C–3 through C–7. Gernavage urges this Court to

1. Substantial evidence has been defined as such relevant evidence "as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427.

2. The Court must affirm the decision of the Secretary even if there is also substantial evidence for plaintiff's position. *See Schauer,* 675 F.2d at 57.

3. 20 C.F.R. § 404, Subpart P, Appendix 1 provides:
Section 1.00 *Musculoskeletal*
A. . . . Pain may be an important factor in causing functional loss, but it must be associated with relevant abnormal signs or laboratory findings . . .
B. *Disorders of the Spine,* associated with vertebrogenic disorders *as in 1.05(c),* result in impair-

ment because of distortion of the bony and ligamentous architecture of the spine or impingement of a herniated nucleus pulposus or bulging annulus on a .nerve root . . .
Section 1.05 *Disorders of the Spine*
C. Other vertebrogenic disorders (e.g. herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
    1. pain, muscle spasm and *significant limitation of motion in the spine;* and
    2. Appropriate radicular distribution of significant motor loss with muscle weakness and *sensory and reflex loss.*
20 C.F.R. § 404, Subpart P, Appendix 1 (emphasis added).

conclude that the ALJ's determination that his impairments are not medically equivalent to those required in § 1.05(c) is therefore clearly erroneous.

Defendant observes that although an MRI of plaintiff's cervical spine revealed evidence of one herniated disc, the other findings required by § 1.05(C) were not present. Defendant Mem. at 16. Finelli did not find any significant neurological deficits; Finkel found no evidence of muscle spasm or significant reflex loss, and further reported that plaintiff had a full range of motion of the cervical spine, temperature and touch sensation were intact, and plaintiff's muscle strength was slightly reduced in the right hand, but was normal everywhere else; and although Karam reported a sensory impairment to pinprick and mild weakness of the wrist and fingers of the right hand, he found no evidence of any reflex deficits. Accordingly, this Court finds that there was substantial evidence in support of the ALJ's finding that although plaintiff's disability is serious, it is not the equivalent of a condition set forth in the Listing of Impairments.

The fourth step is a determination of whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. The ALJ found that Gernavage does not have the residual functional capacity to perform his past work. *See* Defendant Mem. at 25.[4] Defendant, only specifically addresses this issue on the last page of her brief. Initially, under a heading entitled "Step Four," defendant states "[t]he ALJ found that plaintiff had the residual functional capacity to perform work-related activities, except for work involving lifting more than twenty pounds and that he

could perform the full range of light work." Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. *See* 20 C.F.R. §§ 404.1567(b) and 416.967(b).

The Court notes that Gernavage describes his former job as requiring him to lift and carry heavy tools and other weighty objects, of as much as thirty pounds, on a regular basis and as further demanding a great deal of bending, crouching, and climbing. Plaintiff Mem. at 9. Such duties clearly fall outside of the range of activities Gernavage is currently capable of performing, and the Court notes that defendant adduces no evidence to the contrary. Rather, defendant acknowledges the ALJ's conclusion that plaintiff's past work "involved greater exertional requirements that [sic] plaintiff was capable of performing." Defendant Mem. at 25.

This Court finds that there is substantial evidence to support a finding that Gernavage does not retain the residual functional capacity to perform his past work.[5]

The fifth and final step is a determination of whether, despite the fact that claimant is unable to perform his past work, there is other work which the claimant could perform. The propriety of the Secretary's decision depends on whether there is substantial evidence to support a finding that there is other work which Gernavage could perform.

---

4. Plaintiff appears confused about the Secretary's position on the fourth stage of the five-part test. Plaintiff states, "[t]he Administrative Law Judge then concludes that the Plaintiff can dd [sic] exertion except that he could not lift more than twenty pounds and that he is unable to perform his past relevant work as an elevator repairman." Plaintiff Mem. at 15. Plaintiff here correctly surmises that the ALJ has found that plaintiff is incapable of performing the duties required of an elevator repairman. Plaintiff also states, however, that the ALJ's determination that plaintiff "was capable of engaging in her [sic] prior occupation is not supported by substantial evidence and is, in fact, irrational and

must be reversed." Plaintiff Mem. at 14. Plaintiff here seems to incorrectly believe that the ALJ made a determination that he could still perform his former work.

5. The Secretary's determination that Gervanage can perform the full range of light work is most easily understood as a finding that there is other work which he can perform, rather than that he is able to resume his past work. The Court again notes that Gervanage's past work regularly required him to lift in excess of thirty pounds but that light work involves lifting no more than twenty pounds.

The Court notes that since plaintiff has adequately shown that he cannot return to his prior occupation, the Secretary bears the burden of proving, factoring in Gernavage's age, education, past work experience and medical disability, that there is alternative substantial gainful work in the national economy that plaintiff could perform. *See Parker,* 626 F.2d at 231; *Berry,* 675 F.2d at 467; 42 U.S.C. § 423(d)(2)(A). This Court finds that the Secretary has sufficiently demonstrated that there is substantial evidence in support of her decision that Gernavage is capable of performing work other than that which he previously performed.

There is an adequate amount of evidence in support of the ALJ's decision that Gernavage could perform light work. The medical findings indicate that plaintiff's neck condition does not impose debilitating functional limitations. Finelli found a decreased range of motion of the neck but no atrophy or neurological deficits were noted. Finkel determined that Gernavage had a full range of motion of the cervical spine, and noted no evidence of significant reflex loss. He further stated that the grip strength of Gernavage's right hand was nearly normal, his muscle strength elsewhere was 5/5, temperature and touch sensation were intact, and that there was no evidence of muscle spasm or muscle atrophy. Karam found no tenderness or spasm of Gernavage's arm muscles, no atrophy, and Gernavage's reflexes were present and brisk.

An MRI of Gernavage's right shoulder showed degenerative changes, tendinitis, and impingement syndrome, but no evidence of rotator cuff tear. Finelli found limitation of motion of plaintiff's right shoulder but no other abnormalities relating to that shoulder. Karam reported that there was no evidence of pain on movement of the shoulder and no palpation. In addition, there was no soft tissue swelling, redness or tenderness in the

area of the shoulder joint. In fact, Finkel found a full range of motion of the upper extremities.

In addition, there was no medical evidence of any back impairment. Karam's examination of plaintiff's lower back region revealed that plaintiff was able to flex his lumbar spine fully from the vertical position to ninety degrees. The straight leg raising test was performed to eighty degrees, which was almost normal. Karam found no pain on motion or palpation of the lumbar spine and no spasm or atrophy of Gernavage's legs. Knee and ankle jerks were present and equal, and sensory modalities with respect to Gernavage's legs were intact. Neither Finkel nor Finelli identified any abnormal findings concerning the lower back.

Lastly, the ALJ considered Gernavage's subjective complaints of pain in the back, neck, right shoulder and arm, and numbness of the right hand. The ALJ concluded that plaintiff's allegations of constant and severe pain were not credible. Plaintiff considers this last finding to be particularly egregious. He observes that the ALJ has indicated that plaintiff suffers from a severe chronic cervical and right shoulder pain syndrome with disc pathology, but yet has found allegations of pain to be unbelievable. Gernavage asserts that the Secretary inappropriately dismissed his subjective symptomatology, and improperly found his assertions of subjective pain to be not credible.

This Court, however, will not second-guess the finding of the ALJ that Gernavage's testimony concerning his subjective symptomatology was not credible.[6] It is within the discretion of the Secretary to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology.[7]

> The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be

---

**6.** Deference should be accorded the ALJ's determination because he heard plaintiff's testimony and observed his demeanor. *See Mejias v. Social Security Administration,* 445 F.Supp. 741, 744 (S.D.N.Y.1978); *Wrennick v. Secretary of Health, Education and Welfare,* 441 F.Supp. 482, 485–86 (S.D.N.Y.1977).

**7.** *Cf.* 20 C.F.R. § 404.1529.

**1420**

Plaintiff's allegations of pain and other subjective symptoms are relevant to the ultimate issue of disability, but Gernavage's assertions, taken together with all the other evidence available to the Secretary, are not enough to mandate a finding of disability. Rather, when all the evidence is considered, the Secretary had ample support for her determination that Gernavage was not disabled. Specifically, there was substantial support for the finding that although Gernavage could not continue to perform the type of work he had done in the past, he retained sufficient residual functional capacity to perform light work.

Accordingly, this Court must affirm the decision of the Secretary.

### D. *Conclusion*

The Court realizes that, in enumerating the evidence in support of the Secretary's finding, it has not treated all of the medical evidence even-handedly. The reason for such treatment is that it does not fall to this Court to evaluate the Secretary's decision *de novo*. Rather, this Court's sole function is the more limited one of determining whether, regardless of the existence of substantial evidence in support of plaintiff's position, there is substantial evidence supporting the Secretary's determination.[8]

This Court finds that there was substantial evidence to support the Secretary's determination. Accordingly, plaintiff's motion must be denied, defendant's motion must be granted, and this Court must affirm the decision of the Secretary.

### CONCLUSION

For the reasons stated above, this Court grants defendant's motion for judgment on

reasonably expected to produce those symptoms.
20 C.F.R. § 404.1529; *Gallagher v. Schweiker*, 697 F.2d 82, 85 (2d Cir.1983) ("[c]ongress authorized the Secretary to deny benefits to claimants ... who, though suffering from severe pain, ha[ve] not produced any medical evidence identifying the underlying impairment.")

the pleadings, and this action is dismissed in its entirety.

**SO ORDERED.**

8. Plaintiff, in this case, does not marshal sufficient evidence to demonstrate that the Secretary's decision was based on insufficient proof, but rather merely shows that had the Secretary rendered a ruling favorable to plaintiff, such a finding also would have been supported by substantial evidence.