Mamerta RUFINO, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of
Social Security Administration,
Defendant.

No. 97 CIV. 0859(JES).

United States District Court,
S.D. New York.

April 17, 1998.

Mamerta Rufino, New York, NY, pro se.

Mary Jo White, U.S. Atty. for Southern District of New York, New York, NY, for Defendant Kenneth S. Apfel; Lorraine S. Novinski, Asst. U.S. Atty., of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 42 U.S.C. § 405(g), plaintiff Mamerta Rufino ("Rufino") brings the instant action challenging the decision of defendant Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income ("SSI") disability benefits. Pursuant to Federal Rule of Civil Procedure 12(c), the Commissioner moves for judgment on the pleadings. For the reasons set forth below, the Commissioner's motion is granted.

## BACKGROUND

Rufino was born in the Dominican Republic on May 11, 1935, and came to the United States in 1978. *See* Transcript of the Administrative Record ("Tr.") at 25, 36. Although Rufino received a seventh grade education in the Dominican Republic, she is unable to communicate in English. *Id.* at 25. From 1979 through 1990, Rufino worked in a lamp factory, manually folding shades and applying ribbons to the shades with a glue gun. *Id.* at 25–26, 66. Rufino describes a typical eight-hour work day in this job as involving little to no walking, four hours of standing, four hours of sitting, constant bending and reaching, and lifting a maximum of twenty pounds. *Id.* at 67. On February 10, 1990, Rufino stopped working when her employer moved its facilities to North Carolina. *Id.* at 26. However, Rufino testified that she would have continued working had the plant remained in New York. *Id.* Rufino claims that she has been disabled by arthritis, an intestinal ulcer, high blood pressure, and persistent weakness and tiredness since the plant closed. *Id.* at 62. Although Rufino testified that she cannot work because of pains in her legs and lower back, *see id.* at 27, she admits that she performs all of her own household chores, including cooking, cleaning, shopping, and housework, *see id.* at 28, and engages in social activities such as visiting friends and family and taking walks. *Id.*

### ADMINISTRATIVE PROCEDURE

On January 12, 1995, Rufino filed applications for SSI disability benefits. *See* Tr. at 32–38. On March 21, 1996, after her applications were denied initially and upon reconsideration, a hearing before Administrative Law Judge ("ALJ") Mark S. Sochaczewsky was held. *Id.* at 21–31, 48–51, 54–57. Rufino appeared at the hearing and testified through a Spanish interpreter. *Id.* at 21–31.

On April 26, 1996, ALJ Sochaczewsky issued a written decision (the "ALJ decision") based upon medical reports submitted by Rufino's physician, Dr. Leonard Conger, consultative physicians Drs. S. Rocker and Roc-

co P. Bevilacqua, and Rufino's own testimony, finding that Rufino was not disabled[1] at any time during the application process through the issuance of the ALJ decision. *Id.* at 12, 15 (Dept. of Health and Human Serv. Soc. Sec. Admin. Office of Hearings and Appeals Decision dated April 26, 1996). ALJ Sochaczewsky found it especially noteworthy that Rufino received no specific treatment for her musculoskeletal complaints, *id.* at 14, and that her claims of disabling pain were unsupported by objective clinical findings. *Id.* at 15. Further, the ALJ noted that Rufino's elevated cholesterol has not resulted in any demonstrable functional limitations, and her mild hypertension has not resulted in any complications nor end organ damage. *Id.* at 14. ALJ Sochaczewsky held that the medical evidence supported a finding: (1) that Rufino did not suffer from an impairment or combination of impairments listed in, or medically equal to, an impairment contained in Appendix 1, Subpart P, Regulations No.4, *see id.* at 15 ¶ 3; (2) that Rufino has the residual functional capacity[2] to perform work-related activities except for work involving lifting and carrying more than twenty-five pounds, *id.* ¶¶ 5–6; and (3) that Rufino's impairments do not prevent her from performing her past relevant work. *Id.* ¶ 7. Thus, the ALJ concluded that Rufino was not under a disability as defined by the Social Security Act. *Id.* ¶ 8.

On November 15, 1996, the ALJ decision became final when the Appeals Council denied Rufino's request for review. *Id.* at 5–6 (Letter from Bernard A. Dowgiello, Admin. Appeals Judge, Soc. Sec. Admin., to Mamerta Rufino, *pro se,* dated November 15, 1996). Rufino filed this suit shortly thereafter.

**1.** The Social Security Act defines a "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

**2.** "[R]esidual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 416.945(a).

## MEDICAL EVIDENCE IN THE ADMINISTRATIVE RECORD

During the application process, Rufino stated that she has been medically treated by Centro Medico Dominicano ("CMD"). *See* Tr. at 64 (Dept. of Health and Human Serv. Disability Report dated Jan. 12, 1995). On June 19, 1995, Dr. Leonard Conger, M.D., of the CMD reported that Rufino suffers from hyperlipoproteinemia, mild hypertension and a possible psychiatric disorder.[3] *Id.* at 86. Dr. Conger further reported that he has been treating Rufino since June 1, 1992, for mild hypertension, increased cholesterol, and arthritis pain. *Id.* at 87, 90. Dr. Conger found Rufino to be physically unremarkable and her EKG normal. *Id.* at 88–89. However, Dr. Conger was unable to form an opinion about Rufino's physical limitations arising from her medical condition. *Id.* at 90.

On March 9, 1995, Rufino was examined by Dr. S. Rocker, M.D., a consultative physician for the Social Security Administration. *See* Tr. at 78–85. Dr. Rocker observed that Rufino exhibited a normal station and gait, *see id.* at 79, had no difficulty standing up from a seated position or getting onto and off the examination table, *id.,* and Rufino displayed full use of both hands and arms in robing and disrobing. *Id.* Dr. Rocker noted that Rufino's grasping strength and manipulative functions were not impaired, and that Rufino displayed a full range of motion in the lumbar spine with no tenderness or muscle spasm of the lumbosacral or cervical spine or any other musculature. *Id.* at 131. Straight leg raising was negative and Rufino displayed no muscular atrophy. *Id.* Dr. Rocker also noted that all of Rufino's peripheral joints displayed full range of motion without deformities, swelling, warmth, redness or tenderness. *Id.* Dr. Rocker reported that

**3.** "Hyperlipoproteinemia" is either an increased rate of synthesis or a decreased rate of breakdown of lipoproteins, which transport triglycerides and cholesterol in plasma. *See Taber's Cyclopedic Medical Dictionary,* 863 (16th ed.1989) (hereinafter *"Taber's "*). Rufino has denied ever receiving any psychiatric or psychological treatment, and there is no evidence in the Administrative Record regarding this. *See* Tr. at 30.

Rufino was able to "heel, toe, and tandem walk without difficulty." *Id.* Furthermore, Dr. Rocker found Rufino to be alert and oriented, with normal tone and strength throughout. *Id.* Dr. Rocker consulted Dr. Rocco P. Bevilacqua, M.D., regarding x-rays of Rufino's right knee, lumbosacral spine, and chest. *Id.* at 83–85. Dr. Bevilacqua concluded that Rufino suffered from osteoarthritis in her right knee,[4] *see id.* at 83, mild scoliosis with convexity to the right in her lumbar spine and minimal to mild bilateral condensing ileitis,[5] *id.* at 84, and mild cardiomegaly.[6] *Id.* at 85. Based upon his own observations as well as Dr. Bevilacqua's findings, Dr. Rocker concluded that Rufino suffered from hypertension and arthralgias [7] of the cervical spine, lumbosacral spine and knees. *Id.* at 79. Dr. Rocker found Rufino to have no objective musculoskeletal impairment per the examination, and concluded that Rufino had no significant impairment in her ability to do work-related activities, thus her prognosis was "good." *Id.* at 79–80.

On May 30, 1995, Dr. Anthony L. Danza, M.D., evaluated Rufino's residual functional capacity. *See* Tr. at 40–47. Based upon the medical evidence contained in Rufino's SSI benefits file, Dr. Danza opined that Rufino could occasionally lift and/or carry 50 lbs., frequently lift and/or carry 25 lbs., sit, stand and/or walk (with normal rest breaks) for a total of 6 hours per eight hour work day, and that Rufino's ability to push and/or pull was unlimited in relation to her upper and lower extremities. *See id.* at 41. Thus, Dr. Danza concluded that Rufino's medical records did not establish any postural, manipulative, vi-

sual, communicative or environmental limitations. *Id.* at 42–44.

## RECENT MEDICAL EVIDENCE

On September 12, 1997, a Pre–Trial Conference was held, at which time Rufino offered the Court a handwritten note from Dr. Clayton Natta, M.D., dated September 10, 1997. *See* Defendant's Memorandum of Law in Support of his Motion for Summary Judgment dated November 7, 1997 ("Def.'s Mem.") Exh. A. Dr. Natta stated that Rufino was being treated for vertigo, hypertension, hypercholesterolemia and hypertriglyceridemia, osteoporosis and polyarthritis. *See id.* Dr. Natta labeled Rufino as "chronically disabled," and opined that she "is unable to work in any capacity." *Id.* Thereafter, on January 5, 1998, Rufino sent the Court a report by Dr. Natta dated October 24, 1997. *See* Letter from Mamerta Rufino, *pro se* to Hon. John E. Sprizzo dated January 5, 1997[sic]. Dr. Natta reported that he has continuously treated Rufino on a monthly basis since July 22, 1997. *See id.* at 3 [unnumbered]. Dr. Natta reaffirmed his aforementioned previous diagnoses, *id.* at 4 [unnumbered], and estimated that during an eight hour work day, Rufino could only sit in a normal seated position, stand, and/or walk for one-half hour continuously for a total of one hour per day per activity. *Id.* at 6 [unnumbered]. Dr. Natta also opined that during an eight hour work day, Rufino could not bend, squat, crawl, climb, reach, and/or lift or carry any objects regardless of their weight. *Id.*

---

4. While Dr. Bevilacqua found no evidence of fracture, dislocation or periosteal injury to Rufino's right knee, he noted that there was calcification or spur formation of the anterosuperior aspect of the patella at the site of insertion of the suprapatellar ligament. *See* Tr. at 83 (Report of Dr. Rocco P. Bevilacqua, M.D., dated March 9, 1995). Dr. Bevilacqua also noted minimal subchondral cystic changes and eburnation of the articulating margin of the tibia slightly more pronounced on the lateral aspect. *Id.*

5. Dr. Bevilacqua noted there was no gross compression fracture, dislocation or spondylolisthesis with respect to Rufino's lumbosacral spine, and that Rufino's sacral segments present no gross abnormalities. *See* Tr. at 84 (Report of Dr. Rocco P. Bevilacqua, M.D., dated March 9, 1995).

Dr. Bevilacqua concluded that Rufino displayed no other significant bone or joint pathology. *Id.*

6. Dr. Bevilacqua noted that Rufino's chest x-ray displayed no gross consolidation, pneumonitis, acid-fast infection, or any other active lung parenchymal disease. *See* Tr. at 85 Report of Dr. Rocco P. Bevilacqua, M.D., dated March 9, 1995. Further, the x-ray indicated that Rufino's heart was of normal contour and position, her aorta and superior mediastinum were within the limits of normal, and her dorsal spine and visualized bony structures of the thorax presented no gross abnormalities. *Id.*

7. "Arthralgia" means a pain in a joint. *See Taber's* at 143.

## DISCUSSION

█ Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of a final agency ruling on SSI disability benefits by filing a civil action in district court. *See* 42 U.S.C. § 405(g). In order to qualify for SSI disability benefits, a claimant must demonstrate that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1527; *see also Bowen v. City of New York,* 476 U.S. 467, 470, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *White v. Secretary of HHS,* 910 F.2d 64, 65 (2d Cir.1990); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *Aubeuf v. Schweiker,* 649 F.2d 107, 111 (2d Cir.1981); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). The Second Circuit has summarized the Commissioner's five-step sequential evaluation process for evaluating disability claims as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then deter-

mines whether there is other work which the claimant could perform.

*Berry,* 675 F.2d at 467. The claimant bears the burden of proof as to the first four steps of the evaluation process. *Id.* If the claimant establishes that her severe impairment precludes her return to her previous occupation, the burden shifts to the Commissioner to demonstrate that the claimant retains the functional capacity to perform alternative gainful work which exists in the national economy. *See, e.g., White,* 910 F.2d at 65; *Parker,* 626 F.2d at 231.

█ Pursuant to its own regulations, the Commissioner must evaluate every medical opinion it receives, regardless of its source. *See* 20 C.F.R. § 404.1527(d); *see also Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993). In addition, the Commissioner will consider a claimant's contentions about pain or other symptoms, but these factors alone will not establish disability. *See* 20 C.F.R. § 404.1529(a). There must exist medical and clinical findings which support the conclusion that the claimant suffers from a medical impairment which could "reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all other evidence ... would lead to the conclusion that [the claimant is] disabled." *Id.* Since the Commissioner is responsible for making the ultimate determination whether or not a claimant meets the statutory definition of disability, *see* 20 C.F.R. § 404.1527(e)(1), the reviewing court should not decide the case de novo. *See Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991); *Parker,* 626 F.2d at 231.

## I. SUBSTANTIAL EVIDENCE

█ An applicant seeking to overturn a final agency decision denying disability benefits must establish either that the Commissioner committed legal error or that the decision is not supported by substantial evidence on the record. *See Arnone v. Bowen,* 882 F.2d 34, 37 (2d Cir.1989); *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987); *Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir.1984); *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983). The Supreme Court has defined "substantial evidence" as " 'more than a mere

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 401; *Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir.1990); *Schisler v. Bowen,* 851 F.2d 43, 43 (2d Cir.1988); *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir.1982); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980); *Gernavage v. Shalala,* 882 F.Supp. 1413, 1416 (S.D.N.Y.1995). The Second Circuit has squarely held that where a district court finds that there is substantial evidence supporting the Commissioner's decision, that decision must be upheld, even if there exists substantial evidence to support the plaintiff's position. *See Alston,* 904 F.2d at 126; *accord Schauer,* 675 F.2d at 57. Finally, while the ALJ must clearly set forth the essential considerations with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence, *see White,* 910 F.2d at 65; *Ferraris v. Heckler,* 728 F.2d 582, 586 (2d Cir.1984), he need not "explicitly reconcile every conflicting shred of medical testimony." *Mongeur,* 722 F.2d at 1040 (citing *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981)).

■ Here, the administrative record before the Court overwhelmingly supports a finding that there exists substantial evidence to support the Commissioner's finding that Rufino did not have a disability. ALJ Sochaczewsky issued a well-reasoned and thorough decision reflecting a detailed evaluation of Rufino's medical records, independent and consultative physicians' diagnoses and medical opinions, Rufino's own testimony as to her joint pain and claimed disability, and regulatory vocational factors. *See* Tr. at 12–15, 21–31; *see also Mongeur,* 722 F.2d at 1037; *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981); *Parker,* 626 F.2d at 231; *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978).

ALJ Sochaczewsky described at length his reasons for discrediting Rufino's claims of constant and totally disabling joint pain, including the relatively minor clinical findings of osteoarthritis in her right knee, mild hypertension and excess cholesterol, mild scoliosis and mild cardiomegaly, and Rufino's ability to carry out daily activities. *See* Tr. at 14. Clearly, Rufino's own testimony and statements regarding her lifestyle and daily activities provides more than adequate support for the finding that she is capable of performing her past relevant work. *See* Tr. at 28 (reading, household chores, cooking, cleaning, shopping, visiting friends and family, going for walks); *id.* at 65 (reading, sewing, chores, using public transportation).

ALJ Sochaczewsky properly attributed significance to Rufino's failure to undergo sustained medical treatment for her musculoskeletal ailments, the lack of which seriously undermines her contention that she was continuously and totally disabled during the relevant time periods. *See Arnone,* 882 F.2d at 39. This is especially true in light of the fact that Rufino testified before the ALJ that she would still be working at the lamp shade factory had it not relocated to North Carolina. *See* Tr. at 26. The Court accords deference to ALJ Sochaczewsky's evaluation since he heard Rufino's testimony first-hand and observed her demeanor. *Mejias v. Social Security Administration,* 445 F.Supp. 741, 744 (S.D.N.Y.1978). Thus, the Court finds that the ALJ decision is supported by substantial evidence in the record.

Finally, Rufino has failed to raise and the Court has not discerned any basis for a finding that the Commissioner committed legal error in reaching his decision that Rufino was not disabled during the relevant time periods. *See Arnone,* 882 F.2d at 37.

## II. *RECENT MEDICAL EVIDENCE*

■ The Court can remand a case back to the Commissioner for reconsideration only "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Moreover, the Second

Circuit has identified a three-prong test that a plaintiff must meet to satisfy these criteria: (1) the evidence is new and not merely cumulative, (2) the evidence is material, meaning it is both relevant to plaintiff's condition during the time period covered by the decision and it could have affected the decision had it been presented earlier, and (3) there is good cause for not having presented this new evidence earlier. *See Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.1988) (emphasis added). Here, Rufino has failed to present any arguments as to why she did not present Dr. Natta's, or another physician's, medical opinions sooner. This is especially significant in light of the fact that Rufino was twice put on notice during the application process, both after the initial denial of her application and the denial upon reconsideration, that her physical ability to perform past relevant work was the crucial issue being considered, and that her own treating physician, Dr. Conger, could not give an opinion on how her medical conditions affected her physically.[8] Thus, Rufino's application does not merit remand back to the Commissioner for reconsideration.[9]

## CONCLUSION

For the reasons set forth above, the Clerk of Court is directed to grant the Commissioner's motion for judgment on the pleadings and to dismiss the action with prejudice.

It is **SO ORDERED.**

---

8. In any event, given the other evidence which clearly established that Rufino was not disabled, it is highly unlikely that Dr. Natta's report, which is conclusory in nature and supported by sparse clinical and diagnostic evidence, would have resulted in a finding of disability.

9. Rufino's age at the time of this opinion is irrelevant since her medical condition and vocational profile from the time she filed her application through the date that the ALJ decision was issued is all that is before the Court at this time. *See* 20 C.F.R. § 416.330.