Blanca TORRES–ROSAS, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services, Defendant.

No. 86 Civ. 4255 KTD.

United States District Court,
S.D. New York.

June 30, 1987.

Torres & Leonard, P.C., New York City, Jose Luis Torres, of counsel, for plaintiff.

Rudolph W. Giuliani, U.S. Atty. for the Southern District of New York, New York City, Donna H. Lieberman, Asst. U.S. Atty., of counsel, for defendant.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

The claimant, Blanca Torres–Rosas, appeals from a decision of the Secretary of Health and Human Services (the "Secretary") denying her Social Security Disability Benefits ("Disability Benefits") and Supplemental Security Income ("SSI"). Both the Secretary and the claimant now move for judgment on the pleadings.

On May 30, 1984, Torres–Rosas applied for Disability Benefits and SSI. Transcript ("Tr.") 36–39, 57–66. She alleged disability due to osteoarthritis and a heart condition. Tr. 36, 58. The applications were denied initially and upon reconsideration. Tr. 40–50.

The case was considered *de novo* by an Administrative Law Judge ("ALJ") on August 21, 1985. Tr. 19–35. At the hearing claimant was represented by counsel and testified with the assistance of a Spanish speaking interpreter. Tr. 10. After reviewing the evidence, the ALJ determined that Torres–Rosas was not disabled within the meaning of the Act and was capable of performing her past work as a sewing machine operator. Tr. 6–11. The Appeals Council concluded on March 28, 1986 that there was no basis for reviewing the ALJ's decision. Tr. 3.

## BACKGROUND AND MEDICAL HISTORY

Torres–Rosas was born on May 10, 1932 in Puerto Rico. Tr. 36. She has an eighth grade education, tr. 78, and possesses limited English language skills. The ALJ noted, however, that she was able to understand his questions without the interpreter's assistance. Tr. 26–27. Claimant immigrated to New York in 1951. Tr. 27 she worked as a sewing machine operator from 1960 until 1975 and was employed briefly as a tomato packer. Her daily activities include watching television, walking around the house, and reading the paper. Tr. 27–28. She occasionally cooks or washes dishes, tr. 26, although her husband, a cook by profession, does most of the cooking and cleaning. Tr. 34.

In June, 1980 claimant had her knees and ankles X-rayed at St. Luke's Hospital. The X-rays revealed degenerative changes in the left knee and ankle and minimal degenerative changes in the right knee and ankle. Tr. 111. In July 1980, Torres–Rosas returned to St. Luke's Hospital complaining of bilateral foot pain. No swelling was observed at that time. Tr. 112.

Torres–Rosas was examined in Puerto Rico in January 1984 by Dr. Ivan Martinez Deliz who diagnosed left carpal tunnel syndrome and left thoracic outlet syndrome. Tr. 129.

On March 19, 1984, an electrocardiogram was performed and was normal. Tr. 114. A gynecological examination on March 28, 1984 indicated that the claimant's post-hysterectomy condition was stable. A chest X-ray taken in April 1984 revealed calcified right mediastinal lymph nodes, some apical pleural thickening, and increased interstitial markings which the report concluded "would be consistant with sarcoidosis." Tr. 121. In May 1984, an X-ray of the cervical spine showed "normal bony alignment and curvature from the level of C–1 through C–6," and "minimal bony encroachment at the intervertebral foramina at the level of C–5–6." Tr. 122.

Dr. Luis Landeo examined claimant in May, 1984 and recorded a severe infection of the left leg, and possible osteoarthritis.

Tr. 88. The doctor opined that claimant's condition would restrict her daily activities, noting also that "[s]he is unable to work at this time pending a complete work up." She was "expected to recover, at least in part," with "significant improvement likely through medical treatment." Tr. 89.

An X-ray of the lumbosacral spine in June, 1984 revealed "only mild degenerative changes," and no evidence of compression fracture or lytic changes. Tr. 123. The examining physician diagnosed "mild diffuse osteoporosis." Tr. 123.

The Secretary retained Dr. Gerald Levental who examined Torres-Rosas in September 1984. Tr. 132, 133. He noted that the claimant experienced pain on flexion of the cervical spine which radiated into her left shoulder and arm. Tr. 131. Pain in the left arm was also elicited by hyperextension of her neck. Tr. 132. Dr. Levental found no left-sided radial pulse and some parasthesias and numbness in the fingers of the left hand. Tr. 131. An X-ray showed minimal narrowing of some finger joints, indicative of arthritis, however, the left shoulder and lumbosacral spine were within normal limits. Tr. 133. Dr. Levental observed a painful slight edema over both extremeties, a result of mild venous insufficiency. Tr. 132. A small ulcer was beginning to develop on the claimant's left ankle. Tr. 132. The cardiac examination showed regular sinus rhythm and no heart murmur. Tr. 132. The electrocardiogram was within normal limits. Tr. 132. A chest X-ray revealed "borderline cardiac enlargement" which the physician attributed to the claimant's not breathing deeply. Tr. 132. Dr. Levental diagnosed a bonified left thoracic outlet and carpal tunnel syndrome, which he stated "gives her a great deal of pain on motion of the left arm and neck." He further noted venous insufficiency and edema of the lower extremeties. Tr. 132.

Dr. Roy Ericksen was also retained by the Secretary and examined claimant in February, 1985. Tr. 138–144. He found no evidence of hypertension, angina, or myocardial infarction. Tr. 138. Heart and chest examinations were unremarkable. Tr. 139–140. A musculoskeletal examination revealed no abnormalities. Tr. 140. Claimant's ankles, knees, hips, elbows, wrists and shoulders were found to be "perfectly normal." Tr. 140. She was able to stand from a sitting position and sit down again rapidly, without discomfort. Tr. 140. Motor coordination, and strength in the extremities were full and normal. Tr. 140. Moreover, Dr. Ericksen stated claimant did not have pain in her shoulders, wrists, elbows, or hands. Tr. 138. He noted pain "running diffusely down the ulnar aspect of the right and left arms." Tr. 138. Dr. Ericksen recorded a positive tuberculin test, erythema with scarring ileopsoas, a positive Kveim test, probable sarcoidosis, chronic low back syndrome, and arthralgia of the neck and arms. Tr. 140–141.

Torres-Rosas' most recent examination at St. Luke's Hospital took place in March, 1985. Tr. 90–91. The Medical Report for Determination of Disability contained the diagnosis "possible sarcoid, rule out tuberculosis." Tr. 90. Claimant was considered unable to do her usual work although the report stated she could do other work. Tr. 91. It was unknown whether she would recover at least in part, or if significant improvement was likely through rehabilitation. The physician further found no marked restriction of claimant's daily activities. Tr. 91.

At the hearing before the ALJ claimant testified that she had been feeling sick since her 1977 hysterectomy, with the worst pain in her left arm and back. Tr. 23–24. She described the pain as persistent but stated it was severe only three or four times a month. Tr. 28–29. Claimant testified to using Motrin 400 and Tylenol with codeine but complained that the medication was ineffective. Tr. 24. She also complained of swollen legs, severe headaches, and neck pain. Tr. 28, 29, 30. Adustin Rosas testified that his wife complained of pain daily and that "almost every night" he would rub her back with Ben-Gay. Tr. 34.

Claimant testified that she cannot walk more than one and one-half blocks but that she does not use a cane or crutches. Tr. 25. The ALJ found the testimony of

Torres–Rosas and her husband "not fully credible." Tr. 11.

## DISCUSSION

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1982).

The Second Circuit has established a five step procedure for evaluating disability claims:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982).[1]

1. The severity regulations, which permit the Secretary to find a claimant not disabled on the basis of medical evidence alone without consideration of other factors were recently upheld by

The claimant has the burden of proving disability. 42 U.S.C. § 423(d)(5) (1982 & Supp. II Supp. III); *Decker v. Harris*, 647 F.2d 291, 293 (2d Cir.1981). An ALJ's determination that this burden has not been met is conclusive if supported by substantial evidence. *Berry*, 675 F.2d at 467.

Substantial evidence is " 'more than a mere scintilla' ", it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). The scope of judicial review is limited to an assessment of the sufficiency of evidence in support of the ALJ's decision. It is not the function of the reviewing court to make a *de novo* determination. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980).

After evaluating the medical evidence, the ALJ concluded that the claimant had "exertional and nonexertional limitations due to left thoracic outlet, left carpal tunnel syndrome, and mild venus insufficiency," but that she did not have a listed impairment or its equivalent. Tr. 11. He further found that the claimant had the residual functional capacity to perform her past work as a sewing machine operator. The ALJ, therefore, held that the claimant was not disabled within the meaning of the Act.

Claimant argues that the ALJ erred in his evaluation of the medical evidence. Specifically, claimant argues that the spur formation in her left knee, her carpal tunnel syndrome, and her left thoracic outlet syndrome significantly limit her ability to work as a sewing machine operator. As further evidence of her inability to do her past work, claimant points to the diagnosis of arthralgia of her neck and arms, possible sarcoidosis, and low back syndrome.

■ Nevertheless, I must uphold the ALJ's determination because I find that it

the United States Supreme Court in *Bowen v. Yuckert*, —— U.S. ——, 107 S.Ct. 2287, 96 L.Ed. 2d 119 (1987).

is supported by substantial evidence. The most significant X-ray findings were of claimant's left knee and ankle in 1980, which showed degenerative changes. Tr. 111. The right knee and ankle showed only minimal changes. Tr. 111. X-rays of claimant's lumbosacral spine in 1984 showed only mild changes and mild diffuse osteoporosis. Tr. 123. X-rays of claimant's left hand showed only minimal narrowing of claimant's finger joints. Tr. 133. Claimant is right handed. Tr. 23. X-rays of her lumbosacral spine and shoulder in September, 1984 were normal. Tr. 133. Dr. Ericksen also found that claimant's ankles, knees, elbows, hips, wrists, and shoulders were "perfectly normal". Tr. 140. He noted that she was able to sit down and stand up rapidly without discomfort. Tr. 140. Motor coordination and strength were also full and normal. Tr. 140.

Moreover, there is no evidence of a cardiac impairment. Although claimant may have had sarcoidosis, that diagnosis was never conclusively made. X-rays of claimant's chest and heart were essentially normal. Tr. 132, 139. The results of claimant's electrocardiogram were also normal. Tr. 140.

Claimant has also failed to prove disabling pain. The ALJ found that although claimant did experience some pain, she exaggerated the severity of her symptoms. Claimant testified to suffering from constant pain, but on further questioning revealed that the severe pain was periodic. A claimant cannot be considered disabled because she cannot work without some discomfort. *Hames v. Heckler,* 707 F.2d 162, 166 (5th Cir.1983).

Thus, the Secretary's denial of disability benefits is supported by substantial evidence. Defendant's motion for judgment on the pleadings is granted. Plaintiff's similar motion is denied.

SO ORDERED.