**Brigida De La CRUZ, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner, Social Security Administration, Defendant.**

**No. CV 95 1039 (RJD).**

United States District Court, E.D. New York.

July 3, 1996.

Plaintiff pro se.

Beth P. Schwartz, United States Attorney's Office, Civil Division, Brooklyn, NY, for defendant.

## MEMORANDUM & ORDER

DEARIE, District Judge.

*Pro se* plaintiff Brigida De La Cruz was born on September 7, 1939 in the Dominican Republic and came to the United States in 1967. Tr. 21–22. She has no formal education and cannot read or write in any language. Tr. 23. She worked for 18 years as a sewing machine operator and stopped working in December 1991. On May 24, 1993, plaintiff filed an application for disability benefits, alleging disability based on "degenerative disc disease" and arthritis beginning on October 1, 1992. Tr. 42–45. The Commissioner denied the application initially and on reconsideration.

The Administrative Law Judge ("ALJ") held a hearing on September 12, 1994, at which plaintiff represented herself. In a decision dated October 6, 1994, the ALJ found that plaintiff was not disabled and that she could return to work as a sewing machine operator. Tr. 9–15. The Appeals Council denied plaintiff's request for review on February 2, 1995. Tr. 2–3.

Plaintiff filed this action on March 15, 1995, alleging that she was entitled to disability benefits beginning in January 1993 by virtue of "back pains, spams [sic], numbness feet (legs) hands." On September 11, 1995, the Commissioner moved for judgment on the pleadings. By letter dated October 27, 1995, the Court reminded plaintiff that her response to defendant's motion was due on November 27, 1995. On November 13, 1995, somebody telephoned chambers on behalf of plaintiff and requested an extension. The Court indicated that it would grant the extension provided that it was made in writing. Although a written request for an extension was never made, the Court granted plaintiff until February 12, 1996 to file her response to defendant's motion. By Order dated February 12, 1996, the Court directed plaintiff to inform the Court by March 4, 1996 whether she would like the assistance of counsel and

informed plaintiff that, if she failed to respond to the Order, the Court would decide the motion on submission. Plaintiff never responded to the Order, and she never responded to defendant's motion.

**Medical Evidence**

On April 10, 1993, Dr. Lodha examined plaintiff for complaints of epigastric pain, right side abdominal pain, intermittent chest pain, and shortness of breath. Her blood pressure was 140/90. An EKG revealed some tachycardia but was otherwise normal. A bronchoscope was normal. Tr. 116.

On April 16, 1993, Dr. Ginde, a radiologist, examined x-rays of plaintiff's chest, right hip, and lumbosacral spine. Tr. 128. Dr. Ginde concluded that plaintiff's chest was normal and that her right hip was normal. Dr. Ginde observed a "narrow L4–L5 disc space with vacuum space phenomenon" and suggested a CT scan. Tr. 128.

On April 29, 1993, Dr. Lodha saw plaintiff again, noted that she complained of back pain, advised that she rest for two months due to "disc disease in back," and referred her to the orthopedic clinic at Beth Israel Medical Center. Tr. 117. On May 13, 1993, Dr. Lodha prescribed Naprosyn for plaintiff's back pain. Tr. 119. On May 21, 1993, plaintiff was seen at the Beth Israel Medical Center, and progress notes reflect that plaintiff reported a two-year history of intermittent low back pain radiating down her right leg and that she complained of pain with forward flexion. The clinic doctor prescribed Toradol, ordered a CT scan, recommended rehabilitation, and told plaintiff to return to the clinic in four months. Tr. 131. X-rays of plaintiff's lumbar spine taken on May 21, 1993 showed no appreciable narrowing of the intervertebral disc spaces and minimal degenerative changes in the lower lumbar spine. Tr. 134. Dr. Yang performed a CT scan on May 25, 1993 and diagnosed degenerative disc disease at L4–L5 with minimal posterior bulging of the disc. Tr. 133.

On July 8, 1993, plaintiff visited the rehabilitation clinic at Beth Israel, stating that she had a two-year history of low back pain that had increased during the last six months. The attending doctor noted that the nonsteroidal anti-inflammatory drug relieved plaintiff's back pain to some extent. Plaintiff was diagnosed with muscular/ligamentous strain. Tr. 141. The doctor stated that plaintiff should continue taking the nonsteroidal anti-inflammatory medication, that she should continue her home exercise program, and that she should return to the clinic in two months. Beth Israel progress notes dated July 16, 1993 show that plaintiff had a full range of motion and listed her diagnosis as degenerative joint disease at L4 and L5. Tr. 132.

Dr. Hwang saw plaintiff in a consultative examination on August 17, 1993. Tr. 88–91. Dr. Hwang noted that plaintiff was in no acute distress and that her gait and station were normal. Her blood pressure was 140/90. Dr. Hwang observed that flexion of plaintiff's lumbar spine was accomplished to 30 degrees and that extension, lateral bending, and rotation of the lumbar spine were accomplished to 20 degrees. He also found that plaintiff's lumbar lordosis was "normal with no scoliosis" and noted that there was no paraspinal muscular spasm and no tenderness over the spine. Dr. Hwang commented that plaintiff's cervical spine had a full range of motion. Dr. Hwang also examined plaintiff's extremities and determined that she had the full range of motion in her joints. Based on his examination, Dr. Hwang concluded that plaintiff had lumbago and that this condition placed a "mild limitation" on "walking, climbing, carrying, pushing [and] pulling" but that it imposed no limitation on sitting. Tr. 91. An x-ray of plaintiff's lumbosacral spine taken on August 17, 1993 showed a narrowing with discogenic sclerosis at L5–S1. Tr. 92.

On September 23, 1993, plaintiff returned to the Beth Israel clinic, again complaining of back pain. She was unable to forward flex. Plaintiff was directed to take a nonsteroidal anti-inflammatory medicine and was told to return to the clinic in two months. Tr. 142. On October 2, 1993, plaintiff returned to Dr. Lodha, complaining of chest pain and abdominal pain. Dr. Lodha noted that her abdomen was soft with hepatomegaly. An echo doppler was normal, and an abdominal sonogram was normal. Tr. 120–121.

On October 22, 1993, plaintiff returned to Beth Israel, complaining of low back pain. Straight leg raising and internal rotation of her right hip were painful. The clinic doctor diagnosed plaintiff with low back pain, prescribed nonsteroidal anti-inflammatory medication, gave her a physical therapy plan, advised her to diet, and told her to return in four months.

Dr. Mescon saw plaintiff in a consultative examination on November 3, 1993. In his report, Dr. Mescon stated that plaintiff was claiming disability based on alcohol abuse and asthma. Dr. Mescon recorded that plaintiff has smoked one pack of cigarettes a day for forty years and that she drinks 3–4 beers a day and 5–10 shots of rum on the weekends. He noted that her blood pressure was 150/80. Tr. 95. Plaintiff told Dr. Mescon that, as a result of her low back pain, she could only walk four blocks, that she could only sit for two hours, and that she could only stand for one hour. Plaintiff also complained that the pain radiated down her right leg. Based on his examination, Dr. Mescon diagnosed plaintiff with mild hypertension and low back pain with radiculopathy. Dr. Mescon stated that plaintiff's ability to sit and stand would not be compromised by her back condition, but he opined that her ability to climb, push, pull or carry heavy objects would be limited by her back problem. Dr. Mescon concluded that plaintiff's prognosis for her back condition was "difficult to determine" and recommended that the prognosis might improve if "adequate analgesic medications were administered." Tr. 97.

On November 3, 1993, Dr. Juan Fiks saw plaintiff in a consultative psychiatric examination. Tr. 99–100. Dr. Fiks concluded that plaintiff was capable of relating to the public and to co-workers and that she was capable of handling work-related stress "as long as she is not under the influence of alcohol." Tr. 100. On November 24, 1993, Dr. Max Brandt completed a mental residual functional capacity assessment of plaintiff in which he concluded that her mental residual functional capacity was not significantly limited. Tr. 103.

On November 18, 1993, plaintiff returned to the rehabilitation clinic at Beth Israel, complaining of back pain. Tr. 143. Plaintiff admitted that she was not doing her home exercises. The attending physician noted that plaintiff had poor forward flexion. On January 29, 1994, plaintiff returned to Dr. Lodha, complaining that she had not had her menstrual period for over one and one-half years. Tr. 122. He diagnosed plaintiff with post-menopausal bleeding and referred her to a gynecologist. Dr. Lodha noted that his examination of her back and extremities was "negative."

The record reflects that plaintiff missed appointments at Beth Israel in February 1994 and May 1994. Tr. 130. On August 19, 1994, Dr. Shaw examined plaintiff at the Beth Israel clinic. Tr. 148–151. In his notes, Dr. Shaw stated that plaintiff's low back pain was "usually controlled reasonably well" with Naprosyn. Dr. Shaw commented that plaintiff's heel-toe walking was intact and that her toe walk revealed a weakness in her right calf. He observed that plaintiff's right knee extension was 4/5 and that plaintiff had a decreased sensation to light touch in her right leg. Dr. Shaw found that plaintiff had no problems with straight right leg raising but that she complained of pain at sixty degrees on left straight leg raising. He also noted that right hip rotation was painful. He remarked that an x-ray taken in May 1993 showed disc narrowing at L4–L5 and minimal degenerative changes. He also noted that a May 1993 CT scan of the lumbar spine revealed a posterior bulge at L4 and L5. Dr. Shaw diagnosed plaintiff with obesity and "low back pain—primarily mechanical" and recommended physical therapy and Naprosyn. Tr. 151.

Plaintiff and her daughter both testified at the September 12, 1994 hearing before the ALJ. In addition, Dr. Katz, an orthopedist, testified as a medical expert. Dr. Katz testified that, based on his review of the medical records and the CT scan, plaintiff had degenerative disc disease. Tr. 39. Dr. Katz opined that plaintiff could lift ten to twenty pounds, could sit for most of the day with several breaks, and could walk for most of the day. Tr. 40. Dr. Katz cautioned that plaintiff should avoid stooping, kneeling, climbing, or bending. Tr. 40.

In his decision dated October 6, 1994, the ALJ concluded that plaintiff retained the residual functional capacity to perform the full range of light work and that she could therefore return to her past work as a sewing machine operator. Tr. 9–15. The ALJ acknowledged that plaintiff had back problems but determined that she could still return to work as sewing machine operator. The ALJ noted that her work as a sewing machine operator required no lifting or carrying and that the job would be sedentary except for the need to use foot controls to operate the machine. The ALJ found that plaintiff was not disabled due to her hypertension, noting that it was adequately controlled by medication and that plaintiff did not attribute any symptoms to it during her testimony.

In reviewing the Commissioner's determination that a claimant is not disabled, a district court "may only set aside a determination which is based on legal error or not supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). Substantial evidence "is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted). Having reviewed the entire record in this case, the Court finds that the Commissioner's decision was not based on legal error and is supported by substantial evidence.

The Court notes that the record contains references to various conditions from which plaintiff allegedly suffered, including anxiety disorder, arthritis, alcohol abuse, asthma, back pain, and hypertension. At the hearing, the ALJ asked plaintiff what problems she was having, and plaintiff responded that she had back pain that radiated down her right leg. Tr. 25. Plaintiff did not describe, or even mention, any other disabling conditions during her testimony. Accordingly, the Court finds that the ALJ therefore properly focused his analysis on plaintiff's back condition.

Based on the treating and consultative physicians' reports and the x-rays and CT scan in the record, it is clear that plaintiff has degenerative disc disease. Notwithstanding this impairment, the medical evidence in the record does not demonstrate that plaintiff cannot return to work as a sewing machine operator. Indeed, no doctor, treating or consultative, found that plaintiff was disabled because of her back condition. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983) (recognizing that the Commissioner "is entitled to rely not only on what the record says, but also what it does not say").

The medical evidence in this case supports the ALJ's determination that plaintiff's back problem does not prevent her from returning to work as a sewing machine operator. Dr. Hwang, a consultative physician, found that plaintiff's back pain only imposed mild limitations on walking, climbing, carrying, pushing, and pulling and that it imposed no limitations on sitting. Dr. Mescon, another consultative physician, concluded that plaintiff's ability to sit and stand would not be affected by her back condition but that her ability to climb, push, pull or carry heavy objects would be limited. Dr. Shaw, a treating physician, diagnosed plaintiff with low back pain, recommended physical therapy, and prescribed Naprosyn. Dr. Katz, an orthopedist, reviewed plaintiff's medical records and concurred with the examining doctors' diagnoses of degenerative disc disease. In addition, Dr. Shaw opined that plaintiff could sit for most of the day with several breaks and that she should avoid stooping, kneeling, climbing, or bending. In sum, the medical evidence clearly supports the ALJ's determination that plaintiff could return to work as a sewing machine operator.

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted. The Clerk of the Court is directed to close this case.

SO ORDERED.