**Brenda BECKWITHE, Plaintiff,**

v.

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

**No. 02CV203SLT.**

United States District Court,
E.D. New York.

March 10, 2005.

Brenda Beckwithe, Jamaica, NY, pro se.

Kimberly L. Schiro, U.S. Attorney's Office, Brooklyn, NY, for Defendant.

### MEMORANDUM & ORDER

TOWNES, District Judge.

Defendant's motion for Judgment on the Pleadings is granted. This memorandum briefly address Plaintiff's claims.

### I. *Facts and Procedural History*

Brenda Beckwithe ("Beckwithe," "Plaintiff" or "Claimant") filed an application for disability insurance and Supplemental Security Income ("SSI") on July 12, 1999. (Administrative Transcript ("Tr.") 82–84, 167–170). The application was denied, reconsidered and denied again. (Tr. 66–73, 174–178.) Plaintiff then sought review before an Administrative Law Judge ("ALJ") who, on August 22, 2000, denied her application. Plaintiff unsuccessfully sought review before the Appeals Council before filing the instant application with this Court.

Beckwithe is 59 years old. (Tr. 82.) She graduated from the High School of Fashion Industries in 1964 and worked from 1974 to 1998 as a data entry clerk. (Tr. 35.) In January of 1997, Plaintiff tested positive for the Human Immunodeficiency Virus ("HIV"). (Tr. 88.) She stopped working on December 24, 1998, after finishing an assignment for a temp agency. (Tr. 35.) She complained of being nauseous and dizzy, which, she alleges, prevents her from working, though she did testify that she unsuccessfully continued to seek data entry positions until May 1999. (Tr. 35–36.) At the time of the hearing before the ALJ, Plaintiff was on several types of medication, including Fortovase, Zerit, Epivir, as well as BC Powder and multivitamins. (Tr. 43.) Her symptoms include herpes zoster, headaches, occasional diarrhea, back pain, and nausea. (Tr. 43–60.)

Primarily, Plaintiff complains of pain after walking, standing, sitting, bending, kneeling, and lifting. (Tr. 43–60.) She also alleges that she experiences extreme fatigue and, claims that as a result "gets fired more than usual." (Tr. 43–60, 74, 88.) In order to enter or exit her basement apartment, Plaintiff must descend or climb ten steps four to five times per day. (Tr. 28.) She is able to travel by public transportation and did so when working as a data entry clerk. (Tr. 32.) On the job, Plaintiff would be primarily seated, Tr. 36, and though she was not required to carry or lift anything, Tr. 37, she claims to experience nausea and fatigue requiring her to nap at her desk. (Tr. 60–61.) Additionally, after five to six block of walking, Tr. 46, 30–45 minutes of standing, Tr. 48, or lifting more than five to ten pounds, Tr. 49, Plaintiff claims to experience extreme pain or fatigue. However, she is able to perform household chores such as cooking, cleaning and food shopping (Tr. 58–59.)

The medical evidence considered by the ALJ included Progress Notes filled out by Plaintiff's treating physician, Dr. Collette Simon, indicating that Plaintiff had no complaints, other than weight gain and skin discoloration, during two check up visits, (Tr. 124, 126.) Dr. Simon also reported that Plaintiff "looks well," and that she is "clinically stable." (Tr. 41, 126.) Additionally, the ALJ considered a report by Dr. Howard Finger, who reported that Plaintiff was "alert" and "in no acute distress." (Tr. 145.) Plaintiff reported to Dr. Finger that she did not have a history of fevers, night sweats, tuberculosis, pneumonia, oral thrush or a history of diarrhea. (Tr. 145.) Dr. Finger concluded Plaintiff's overall prognosis was "guarded." (Tr.

147.) He added: "In regard to work-related activities, no gross difficulties noted in terms of sitting. She appears to be mildly limited in the duration of time she is able to stand, mildly limited in the distance she could ambulate and mildly limited in her ability to lift or carry as a result of these factors." (Tr. 147.)

The ALJ denied Plaintiff's application, finding that she was still qualified to work as a data entry clerk. (Tr. 8–17.) Plaintiff sought review before the Appeals Council, which was denied. (Tr. 4–5.)

## II. Discussion

### Scope of Review

■ Judicial review of SSI benefit determinations is governed by 42 U.S.C. § 1383(c)(3) (1996), which expressly incorporates the standards established by 42 U.S.C. § 405(g)(1996). In relevant part, § 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, then her decision must be affirmed. The Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla[;] [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence supports a finding of the Secretary, the court must not look at the supporting evidence in isolation, but must view it in light of other evidence in the record that might detract from such a finding. including any contradictory evidence and evidence from

which conflicting inferences may be drawn." *Rivera v. Sullivan*, 771 F.Supp. 1339, 1351 (S.D.N.Y.1991).

■ Nonetheless, the "substantial evidence" test applies only to the Commissioner's *factual* determinations; similar deference is not accorded to the Commissioner's legal conclusions or to the agency's compliance with applicable procedures mandated by statute or regulation. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984) ("This deferential ["substantial evidence"] standard of review is inapplicable, however, to the [Commissioner's] conclusions of law."). Accordingly, the Commissioner's legal conclusions and compliance with applicable regulatory and statutory mandates are reviewed *de novo*.

### Disability Determinations

In order to qualify for either disability or SSI insurance, a claimant must be deemed "disabled" as the term is defined in 42 U.S.C. §§ 423(d)(1)(A), 1382c (1996).[1]

A person is "disabled" when:

he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C.A. §§ 423(d)(1)(A); 1382c(a)(3)(A)(West Supp.1997). A "physical or mental impairment" consists of "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic technique." 42 U.S.C.A. §§ 423(d)(3); 1382c(a)(3)(D). Nonetheless,

an individual shall be determined to be under a disability only if his physical or

---

1. The guidelines for eligibility of disability insurance are codified in 42 U.S.C.A. § 423, while the guidelines for SSI are codified in § 1382.

mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner determines whether a claimant meets the statutory definition of "disabled" in five, successive steps (the "Analysis"). *See* 20 C.F.R. § 416.920 (1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). These steps may be summarized as follows:

(1) Is the claimant gainfully employed? If she is, then she is not disabled. If she is not, then the analysis proceeds to the second step.

(2) Does the claimant have a "severe" impairment(s) -i.e., one that significantly limits her physical or mental ability to do basic work activities? If she does not, then she is not disabled. If she does, then the analysis proceeds to the third step.

(3) Does the claimant's impairment(s) meet or equal a "listed impairment?" If it does not, then the analysis proceeds to the fourth step. If it does, then she is disabled.

(4) Does the claimant's impairment(s) prevent her from doing her "past relevant work?" If it does not, then she is not disabled. If it does, then the analysis proceeds to the fifth and final step.

(5) Does the claimant's impairment(s), considered in conjunction with her residual functional capacity, age, education, and past work experience, prevent her from engaging in other substantial gainful work reasonably available in the national economy? If it does not, then she is not disabled. If it does, then she is disabled.

*Id.* Thus, one can only be deemed "disabled" at the third and fifth steps of the Analysis, whereas one can be deemed "not disabled" at every step except the third one.

In determining whether or not a particular claimant is "disabled." the combined effect of multiple impairments must be taken into consideration by the Commissioner:

[i]n determining whether an individual's physical or mental impairment or impairments are of sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

*Id.* at § 1382c(a)(3)(G). However, "[t]he burden of proving disability is on the claimant." *Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir.1984).

■ In weighing the medical opinion evidence, the ALJ is obligated to adhere to the rules set forth in 20 C.F.R. § 416.927(d)(1996). These rules indicate that, generally, more weight is given to the following: (1) opinions provided by physicians who have actually examined a claimant; (2) opinions provided by a claimant's treating physicians; (3) opinions supported by objective relevant evidence; (4) opin-

ions that are more consistent with the record evidence as a whole; (5) opinions of specialists about medical impairments related to their area of expertise; (6) opinions that may be supported by any other factors the claimant brings to the Commissioner's attention. *Id.* at § 416.927(d)(1)—(6). However, the Commissioner must give a treating physician's opinion "controlling weight" if his or her opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* at § 416.927(d)(2). This is the so-called "treating physician rule."

If the Commissioner finds that the treating physician's opinion is not entitled to "controlling weight" then that opinion is assessed according to the aforementioned six factors, taking into consideration the length, nature and extent of the treatment relationship. *Id.* Nonetheless, certain ultimate conclusions remain the exclusive province of the Commissioner. These include the ultimate determinations of whether a claimant is "disabled" within the meaning of § 1382c(a)(3)(A)(1996), whether a claimant's impairment(s) meets or equals a "listed impairment," what the claimant's residual functional capacity is, and the final assessment of vocational factors in relation to the claimant's impairments. *Id.* at §§ 416.927(e)(1)-(2).

III. ALJ's Determination

"The Social Security Act provides that the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...Substantial evidence denotes evidence which a reasonable mind might accept as adequate to support a conclusion." *Rosado v. Shalala*, 868 F.Supp. 471, 473 (E.D.N.Y.1994)(Trager, J.) (citations omitted).

In performing the Analysis, the ALJ held that Plaintiff has not performed substantial gainful activity since the onset of the date she alleged her disability began, satisfying step one. (Tr.14.) Plaintiff's impairment was found to be serious, satisfying step two, but it did not qualify for any listing in Appendix 1 to subpart P of Regulations No. 4 (the "Appendix") in that her impairment did not "meet or medically equal the clinical criteria of any impairment or condition found at the Listing of Impairments." (Tr. 14.) 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step three looks to the listed impairments of the Appendix. Section 14.00 of the Appendix covers impairments of the immune system. The level of severity of HIV required to meet the listing is described in 14.00D:

1. The HIV infection is caused by a specific retrovirus and may be characterized by susceptibility to one or more opportunistic diseases, cancers, or other conditions...Any individual with HIV infection, including one with a diagnosis of Acquired Immune Deficiency Syndrome ["AIDS"], maybe found disabled under this listing if his or her impairment meets any of the criteria in 14.08 or is of equivalent severity to any impairment in 14.08.

Appendix 14.00D(1). Section 14.08 contains an exhaustive list of conditions which, in combination with a diagnosis of HIV or AIDS, qualify a claimant for disability insurance, including, *inter alia*, various bacterial, fungal, and viral infections, extreme weight loss and conditions of the skin and blood.

■ There is no evidence in the record that Plaintiff's condition satisfies any of the requirements of section 14.08. Dr. Collette Simon, Plaintiff's treating physician, indicated that Plaintiff's condition is

stable, that Plaintiff "look[ed] good," and that Plaintiff's only complaints were obesity and skin discoloration (the latter being a side effect of her medication). (Tr. 123, 157.) There is no indication that Dr. Simon found any of the section 14.08 factors to be present.

Additionally, medical reports in the record show that Plaintiff's T4 cells were increasing, Tr. 124, that she felt "a lot better in terms of pain...[and] been in no apparent distress," Tr. 133, that her herpes zoster was improving and blisters subsided, Tr. 133, 136, that she had "no history of fevers, night sweats, tuberculosis, pneumonia, oral thrush or a history of diarrhea," Tr. 145, and no limitations in terms of sitting, mild limitation standing, walking, lifting or carrying. (Tr. 147.) Therefore the ALJ's decision that Plaintiff did not meet a listed impairment is supported by substantial evidence.

█ Step four examines Plaintiff's residual functional capacity ("RFC")—her ability to perform certain tasks associated with work, in light of her impairments. A claimant's RFC is not concerned with the type of impairment, but only the tasks a claimant remains able to perform *after* the abilities that are significantly impaired by the disability are removed. 20 C.F.R. § 416.945(a)(1)("Your residual functional capacity is the most you can still do despite your limitations.").

Dr. Simon's January 2000 report indicated that Plaintiff is not limited in the activities of traveling, sitting, standing, walking or handling objects. (Tr. 159.) Though Plaintiff is limited by fatigue with respect to lifting and carrying, she testified that as a data entry clerk, she was sedentary for a majority of the workday. (Tr. 36.)

Both the Initial and Reconsideration Disability Determinations by the State Agency found Plaintiff's primary diagnosis to be asymptomatic HIV infection. (Tr.

171, 173.) Upon reconsideration, Plaintiff's Supplemental Security Income application was denied because although "the medical evidence shows that [Beckwithe has] had pain and stiffness with some restrictions of [her] activities," her condition improves with treatment. (Tr. 177.) The evidence in the record also shows that Plaintiff is able to ascend and descend a flight of ten steps four to five times per day, take public transportation, walk for up to thirty minutes, provided she takes breaks.

Plaintiff's RFC assessment found that her "T cell count 530[and] viral load is low." (Tr. 149.) Intermittent fatigue was only symptom listed. (Tr. 153.) Additionally, Plaintiff's HIV Medical Report indicated that she was "clinically stable" and the section titled "Current symptoms" read "N/A." (Tr. 158.) She was found to have no significant limitations precluding her from light duty work, such as her prior relevant work as a data entry clerk. (Tr. 159.)

The ALJ determined that because both Dr. Simon and the State Agency physicians deemed Plaintiff fit for the full range of light duty, she remains qualified to perform her past relevant work as a data entry clerk, a classification that precludes disability insurance. (Tr. 15.) In particular the ALJ noted that "the claimant's HIV has been stable when she follows her antiviral medical regimen, to the point that she has remained asymptomatic for several months," Tr. 14, and that "there is no indication that the claimant's human immunodeficiency has been resistant to treatment or that it has disseminated." (Tr. 15.)

█ Though Plaintiff testified that she is unable to work, "[her] statements alone are not enough to establish that there is a physical or mental impairment." 20

C.F.R. § 404.1528. It is within the ALJ's discretion "to evaluate Plaintiff's credibility and to determine, in light of the evidence, the true extent of any pain alleged by Plaintiff." *Rosado,* 868 F.Supp. at 473. The record undoubtedly shows substantial support for the ALJ's findings that Plaintiff's prior work as a data entry clerk did not exceed her RFC.[2]

## CONCLUSION

The Commissioner's motion for judgment on the pleadings is granted.

**SO ORDERED.**

---

**2.** Dr. Simon diagnosed Plaintiff with AIDS. (Tr. 124.) Therefore, this diagnosis ought to be given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(d)(2)(1996). The ALJ specifically mentioned that Dr. Simon's report diagnosing Plaintiff with AIDS was unsupported in the record. (Tr. 15.) However, for reasons explained below, Dr. Simon's diagnosis of AIDS—unaccompanied by any further contradiction of the other medical reports in the record (in terms of Plaintiff's symptoms and their severity)—does not change the Analysis.

Steps one and two, establishing that Plaintiff does not work and has a severe condition, would have had the same result had the ALJ considered Plaintiff to have AIDS rather than HIV.

For step three, it is not relevant whether the diagnosis is HIV or AIDS, as the only additional requirement beyond either diagnosis is fulfillment of one of the 14.08 criteria, which was found to be absent.

Finally, in the absence of any additional limitations of function, step four of the Analysis remains the same for both HIV and AIDS because the RFC measures Plaintiff's *remaining* capabilities in light of all of her impairments The medical experts (including Dr. Simon) found that Plaintiff remains able to perform light work. Therefore, as the result of the Analysis remains the same whether the diagnosis is HIV or AIDS, the ALJ's decision not to accept Dr. Simon's diagnosis of AIDS can be considered harmless error. *Walzer v. Chater,* 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995) ("ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome").