**Patricia TAYLOR, as guardian of Gary Taylor, a minor, Plaintiff,**

v.

**FOOD WORLD, INC., and Bruno's, Inc., Defendants.**

**CV95–H–2384–NE.**

United States District Court, N.D. Alabama, Northeastern Division.

Dec. 5, 1996.

Vernon H. Padgett, Cullman, AL, Daco Suzette Smalley Auffenorde, Auffenorde & Auffenorde P.C., Huntsville, AL, for plaintiff.

Mark L. Taliaferro, Jr., Dent Miller Morton, John E. Norris, Burr & Forman, Birmingham, AL, for defendants.

### MEMORANDUM OPINION AND ORDER

HANCOCK, Senior District Judge.

Presently before the Court are the August 14, 1996 motion of defendants for summary judgment and the motion for partial summary judgment filed on the same date by plaintiff. Pursuant to the Court's August 15, 1996 Order, the motions were deemed submitted, without oral argument, on September 12, 1996.

### I. Procedural History

Plaintiff Patricia Taylor, acting as guardian for her son, Gary Taylor, commenced this action on September 15, 1995 by filing a complaint in this Court. The complaint al-

leged that Gary Taylor[1] suffered from Asperger's Disorder, a form of autism. The complaint described plaintiff's condition as follows:

Asperger's Disorder [is] a form of autism involving pervasive developmental disorders, as a result of which plaintiff is impaired in communication and social interaction, is deficient in many ordinary living and survival skills, cannot perform the duties required in a wide spectrum of jobs, including jobs which require normal mental capacity; and plaintiff alleges that as a result of this disability there are occasions when he behaves in a manner considered abnormal, which includes muteness or irregular speech, being talkative and/or repetitive in his verbal expressions.

(Complaint at ¶ 9). The complaint further alleged that defendants had hired plaintiff as a bagger in one of their Huntsville grocery stores, but had then discharged him because of his disability, in violation of Title I of the Americans with Disabilities Act. The complaint requested declaratory and injunctive relief, back pay, compensatory and punitive damages, and attorney's fees.

The parties filed the present motions on August 14, 1996. Defendant's motion for summary judgment argues that there is no genuine issue of fact on the issue of liability under the ADA, and so requests judgment as a matter of law. Plaintiff's motion for partial summary judgment similarly takes the position that there is no genuine issue of fact with regard to liability, and seeks a judgment that defendants are liable under the ADA as a matter of law. Both parties have provided the Court with briefs and voluminous evidentiary submissions.[2]

## II. Standards for Evaluating a Summary Judgment Motion

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552-53. Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249, 106 S.Ct. at 2510-11.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir.1991) (en banc)).

If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating

---

1. For convenience, the Court will refer to Gary Taylor as "plaintiff" for the remainder of this Memorandum.

2. Although footnote 1 of the Court's August 15, 1996 Order specified that the parties should file only "necessary excerpts" from depositions, plaintiff has provided the Court with the full text of sixteen depositions.

the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. If the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. If the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115–16. The affirmative showing may be accomplished by reference to any combination of the following: pleadings; deposition testimony of a party or its witness; affidavits; responses to interrogatories or failure to respond to interrogatories; requests for admission and responses thereto; and other exchanges between the parties that are in the record. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991); *see also Celotex*, 477 U.S. at 332, 106 S.Ct. at 2557–58 (Brennan, J., dissenting). If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a di-

rected verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

## III. Relevant Undisputed Facts

The record reveals the following undisputed facts. Plaintiff suffers from Asperger's Disorder, a form of autism characterized by pervasive developmental disorders. (Complaint ¶ 9). His disorder causes him to speak more loudly than normal, which often attracts attention to him. (Gary Alex Taylor Depo. at 43–44).[3] Plaintiff does not realize this abnormally loud speech, and consequently cannot correct the problem, even when asked to do so. (*Id.*). Plaintiff's disorder also manifests itself in "echolalia," characterized by repetitive (sometimes nonsense) speech. (Patricia Taylor Depo. at 109–110). Plaintiff is also unable to control this problem. (*Id.*).

Plaintiff's parents have admitted plaintiff to mental hospitals twice for evaluation of his condition. On July 17, 1995,[4] plaintiff was admitted to Vanderbilt University Hospital, partly because of frequent "fits" he has experienced since childhood and which have increased in frequency since puberty. (Patricia Taylor Depo. at 65–69). Plaintiff's mother described plaintiff's behavior during these "fits" as "crying, flailing his arms, sometimes screaming, always crying, sometimes jumping up and down, just out of control, out of control." (*Id.* at 69). These temper tantrums occur about three times per week at home, and typically last several hours each. (Gary Alex Taylor Depo. at 30–37). Plaintiff was also admitted to Crestwood Hospital for about a week in February 1996. (Waddell Aff., Ex. B, at 9–11).

Plaintiff's mental impairment also impairs his social functioning, and plaintiff tends to make inappropriate comments or ask inappropriately personal questions of strangers. (Patricia Taylor Depo. at 59–60; Waddell Aff. at 13).

---

**3.** Gary Alex Taylor is plaintiff's father; plaintiff's name is Gary Allen Taylor.

**4.** Plaintiff was discharged by defendants in September 1994.

Plaintiff began working at defendants' Food World grocery store in Huntsville, Alabama on June 20, 1994. (Complaint at ¶ 8). In his capacity as "utility clerk," plaintiff was required to sack groceries and assist customers in taking groceries to their cars. (Jones Aff. at ¶ 3 and Ex. A). In performing his duties, plaintiff necessarily came into contact with defendants' customers, and was observed speaking loudly and asking inappropriate personal questions of customers. (Birmingham Depo. at 15–17; Case Depo. at 8; Smith Depo. at 14–15; Spivey Depo. at 7–8; Robertson Depo. at 13–14; Rutledge Depo. at 9). Plaintiff admitted asking such personal questions in his deposition. (Gary Allen Taylor Depo. at 29–33). A number of customers complained about plaintiff's behavior. (Jones Depo. at 90–93; Spivey Depo. at 12–15; Robertson Depo. at 12). Other customers gave remarks of praise for Gary's attempt to work despite his mental impairment. (Evans Aff.).

However, Mr. Jones, the manager of the store, decided to terminate plaintiff, and told plaintiff's mother that the decision was due to the customer complaints about Gary's behavior at the store. (Jones Depo. at 24, 87; Patricia Taylor Depo. at 38). Plaintiff was terminated on September 13, 1994. (Complaint at ¶ 10).[5]

The Utility Clerk position that plaintiff held at Food World was the lowest-paying job available at Food World; any reassignment of plaintiff to another position would have resulted in a promotion under the terms of the Collective Bargaining Agreement between Food World and its employees. (Jones Aff. at ¶ 3).[6] Further, any transfer of plaintiff to another position would have violated the competitive bidding provisions of the CBA. (*Id.* at ¶ 4).

On February 15, 1996, approximately five months after this action was commenced, plaintiff's mother filed an application on plaintiff's behalf for Supplemental Security Income (SSI) benefits. (Morton Aff., Ex. A). In that application, Ms. Taylor affirmed that plaintiff was disabled, and had been so since his date of birth, February 14, 1978. (*Id.*). The Social Security Administration (SSA) found plaintiff disabled and awarded him SSI disability benefits. (*Id.*). In doing so, it concluded that plaintiff met or equaled the criteria in Appendix 1 to part 404 of the Social Security regulations, listing 12.05(B). (*Id.*).

## IV. Analysis

The Americans with Disabilities Act, 42 U.S.C. § 12112(a), forbids employers from discriminating against "a qualified individual with a disability" because of such person's disability. Thus, in order to prevail on a claim under the ADA, a plaintiff must demonstrate (1) that he has a disability, as defined in 29 C.F.R. § 1630.2(g); (2) that he is "qualified," as defined in 29 C.F.R. § 1630.2(m); and (3) that the defendant discriminated against him on the basis of disability. *See Cheatwood v. Roanoke Ind.*, 891 F.Supp. 1528, 1536 (N.D.Ala.1995).

---

**5.** Although the Court need not evaluate expert testimony to resolve the instant motions, it is notable that several mental health professionals who examined and/or treated plaintiff suggested that he was capable of working only in a sheltered environment, away from contact with the general public. Plaintiff's discharge summary from Vanderbilt University Hospital recommended "a sheltered work shop with a group home placement." (Plaintiff's Ev. Submission, Ex. dd). James P. Gardepe, Ph.D., recommended that plaintiff explore "supported employment with the assistance of a job coach." (*Id.*, Ex. ee, "Behavioral Assessment," at 4). A discharge summary from plaintiff's vocational rehabilitation from the Huntsville Rehabilitation Center reflected an opinion that plaintiff could not work outside of a sheltered environment, and recommended "that Mr. Taylor be considered for low stressed, supportive, and closely supervised environment. Therefore, a sheltered setting is recommended as [an] interim step to the world of work." (Defendants' Supp. Ev. Submission, Ex. 1, at 6). The affidavit of plaintiff's expert witness, Dr. Garcia, is to the contrary; Dr. Garcia opines that Plaintiff is capable of performing the tasks required of a grocery sacker. However, on June 18, 1996, the Court granted defendants' motion to preclude Dr. Garcia's testimony in this case, because plaintiff failed to comply with the requirements of Rule 26, Fed.R.Civ.P. Thus, the Court will not consider Dr. Garcia's affidavit.

**6.** There is no evidence that plaintiff or his parents requested reassignment to another job, but plaintiff contends now that Food World should have "reasonably accommodated" him under the ADA by reassigning him.

Defendants do not contest, at this time, that plaintiff has a "disability," as defined by the ADA and its accompanying regulations. Rather, defendants argue that there is no genuine issue of fact regarding whether plaintiff is "qualified."

■ Defendants' first argument is that, as a matter of law, plaintiff is judicially estopped from claiming that he is qualified, because he applied for and received SSI disability benefits. The Court agrees.

A person is eligible for SSI disability benefits if he is "disabled." "Disability" is defined as "the inability to do any substantial gainful activity." 20 C.F.R. § 416.905(a). "To meet this definition, you must have a severe impairment, which makes you *unable to do your previous work* or any other substantial gainful activity which exists in the national economy." *Id.* (emphasis added). Plaintiff's application for SSI benefits contained a statement affirming that he is disabled under this definition, and the SSA so found. It takes no great leap of the imagination to conclude that, since plaintiff took this position in proceedings before the SSA, he is estopped from taking a contrary position here. *See Cheatwood,* 891 F.Supp. at 1538–39. *See also McNemar v. The Disney Store, Inc.,* 91 F.3d 610, 617–18 (3d Cir.1996); *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996). By virtue of his representations to the SSA, plaintiff is, as a matter of law, incapable of performing his past work at Food World, and therefore cannot be "qualified" under the ADA.

Plaintiff argues, however, that his application for SSI is not an admission of disability. First, plaintiff argues that his SSI benefits are based on a lack of income, not any inability to work. This assertion is flatly contradicted by plaintiff's application itself, which recites that plaintiff is "disabled." In addition, the "disability determination" made by the SSA recites that plaintiff is "incapable" of performing any substantial work because of his mental impairment. Further, the SSI regulations themselves confirm that total disability is a necessary prerequisite to SSI eligibility. *See* 20 C.F.R. § 416.202(a)(3).

Plaintiff's next argument attempts to draw a fine distinction between the SSI disability inquiry and his status as a "qualified individual" under the ADA. Plaintiff, relying on the Seventh Circuit's decision in *Overton v. Reilly,* 977 F.2d 1190 (7th Cir.1992), argues that a determination of disability by the SSA is not necessarily inconsistent with the ability to perform a particular job. In *Overton,* the Seventh Circuit reached that conclusion for two reasons. First, the court noted that SSI benefits might be awarded based on the claimant's ability to meet a listed impairment, and so there would be no inquiry into the claimant's ability to perform past work or work available in the national economy. *Id.* at 1196. Second, the court observed that a determination of disability by the SSA is "necessarily generalized," and would not preclude the possibility that the claimant could perform some particular job. *Id. See also Robinson v. Neodata Services,* 94 F.3d 499, 502 n. 2 (8th Cir.1996).

The Court cannot accept the limited reading of the SSA's findings embraced by *Overton.* Plaintiff here, like the plaintiff in *Overton,* was deemed disabled because his mental condition met or equaled an impairment listed in part 404, Appendix 1 of the Social Security regulations. However, the Seventh Circuit's conclusion that such a finding is made without inquiry into the claimant's ability to perform work ignores the nature of the listings in Appendix 1. "The Listing of Impairments describes, for each of the major body systems, *impairments which are considered severe enough to prevent a person from doing any gainful activity.*" 20 C.F.R. § 416.925(a) (emphasis added). As noted above, the Social Security Act defines "disability" as the inability to perform any substantial gainful activity, including the claimant's past work or any other work available in the national economy. The listings in Appendix 1 do not exist independently of the requirement of total disability under the Act; rather, they illustrate the principle that the SSA deems certain impairments so severe that they are acknowledged to disqualify the claimant from any work without the necessity of a residual functional capacity assessment.

Viewed in this context, plaintiff's application to the SSA and the SSA's determination of disability are not simply indications that

plaintiff met some arbitrary criteria for receiving government benefits. Rather, plaintiff represented to the SSA that he was "disabled," and the SSA found plaintiff's mental impairment to be so severe that it agreed, without inquiring into plaintiff's residual functional capacity. Implicit in both the application for SSI benefits and the SSA's determination is the fact that plaintiff could not perform his past work as a grocery sacker (or any other work, for that matter). Plaintiff's representation and the SSA's determination are thus clearly contradictory to his current position that he was "qualified" under the ADA.

Defendant's judicial estoppel argument based on plaintiff's SSI application and the SSA's determination is dispositive of the cross motions for summary judgment, but the Court will also address the parties' other arguments. Defendants argue that plaintiff's on-the-job behavior of talking too loudly to customers and asking inappropriate personal questions also rendered him unqualified, and the Court agrees. Plaintiff and his parents all admitted that plaintiff engaged in this behavior, and the unrebutted evidence from Food World employees established that this behavior was nearly constant and that plaintiff could not control it. In addition, although some Food World customers expressed support for plaintiff, others complained about his behavior. Because plaintiff was unable to function in a work environment in which he had constant contact with defendants' customers, he was not qualified for the position of grocery sacker.

■ Plaintiff argues that he is entitled to judgment as a matter of law because defendants failed to investigate any possibility of a reasonable accommodation. Specifically, plaintiff argues that, without any request to do so, defendants should have reassigned him to some other position at the store. This Court has previously rejected precisely the same argument. *See Cheatwood*, 891 F.Supp. at 1538–39 ("Plaintiff was not a 'qualified individual with a disability,' therefore, there was no need to discuss accommo-

dations."). Here, plaintiff was not qualified, and so there was no need for defendants to consider a reasonable accommodation.

■ In addition, there is no genuine issue of fact regarding whether reassignment would have been a reasonable accommodation of plaintiff's disability. Defendants have submitted unrebutted evidence that reassigning plaintiff to any other position in the store would have been a promotion that would have violated the store's Collective Bargaining Agreement (CBA) with its employees. As a matter of law, an accommodation that forces an employer to violate a CBA is not "reasonable." *See Eckles v. Consolidated Rail Corp.*, 94 F.3d 1041 (7th Cir.1996); *Shea v. Tisch*, 870 F.2d 786, 790 (1st Cir.1989).[7] Plaintiff's asserted reasonable accommodation fails, and the Eleventh Circuit has recently held that an employer need not investigate reasonable accommodations when such an investigation "would have been fruitless." *See Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 448 (11th Cir.1996). Plaintiff's proposed accommodation was not reasonable as a matter of law, and defendants' failure to investigate does not transform plaintiff's meritless claim into a viable one.

For the foregoing reasons, the Court concludes that defendants' motion for summary judgment is due to be granted, and a separate Order will be entered to that effect. In addition, it is ORDERED that plaintiff's August 14, 1996 motion for partial summary judgment is DENIED. Finally, the following pending motions in this action are DENIED AS MOOT:

(1) defendants' August 29, 1996 motion to strike;

(2) plaintiff's September 12, 1996 motion to supplement;

(3) plaintiff's September 18, 1996 motion for leave to file a reply brief;

(4) plaintiff's September 19, 1996 motion to strike; and

---

7. The EEOC's interpretive guidelines reach the same result, but under the rubric that a violation of a CBA works an "undue hardship" on the employer. *See* 29 C.F.R. pt. 1630, App. § 1630.15(d).

(5) plaintiff's October 1, 1996 motion to supplement.