**Stephen HARRIS, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant,**

No. 95 CV 2212 (JBW).

United States District Court, E.D. New York.

March 26, 1998.

Binder & Binder, LLP by Steven S. Landis, Hauppauge, NY, for Plaintiff.

Zachary W. Carter, United States Attorney, Eastern District of New York by Nancy A. Miller, Assistant United States Attorney, Brooklyn, NY, for Defendant.

Amended Memorandum and Order

WEINSTEIN, Senior District Judge.

### I. *Introduction*

This case is troubling in view of the dilemmas with respect to protection of the disabled not yet comprehensively addressed by our legal system. On the one hand, there are now greater opportunities for employment under laws protecting the disabled, new technologies allowing work at home and in other non-traditional work places, and statutes requiring removal of obstacles facing disabled persons who wish to work. On the other hand, there is a need to provide necessary income under the Social Security laws for the disabled. *See* Part V, *infra,* "The Disabled, Work at Home, the SSA, and the ADA." How do these two related lines of protection interact?

Defendant, the Commissioner of Social Security, seeks relief from a prior judgment of the court pursuant to Federal Rule of Civil Procedure 60(b)(1). In that judgment, this court reversed a decision of the Commissioner, which had found that plaintiff was not disabled for purposes of disability insurance benefits, and remanded the case for computation and payment of benefits and for contin-

ued disability review. Defendant's motion is denied. The case is again remanded to the Commissioner for the calculation of benefits and continuing statutory disability review.

## II. *Facts*

Plaintiff, Stephen Harris, thirty-five years old with a high school equivalency diploma, suffers from severe Crohn's disease. He has severe diarrhea, abdominal pain, nausea, cramps, and other symptoms. He also suffers from gouty arthritis, depression, and malabsorption of nutrients.

Until about 1985, he worked at a variety of sedentary and non-sedentary jobs. For some time he has been unable to work because of his disease.

In early 1984, plaintiff began seeing doctors because of endemic diarrhea with blood in his stool. The diagnosis was ulcerative colitis.

Plaintiff was treated by Doctor Mark Shaffer, a general practitioner, and Doctor John C. Kaufman, a specialist in gastoenterology. Under Doctor Kaufman's care plaintiff was diagnosed as having extensive small bowel Crohn's disease and placed on medication. Doctor Kaufman saw plaintiff on many occasions, beginning in 1986. While at times plaintiff appeared "to be doing well," he had persistent diarrhea, difficulty properly absorbing certain vitamins and minerals, and at times blood in his stool. Plaintiff's weight fluctuated widely. During this period he was also seen by other treating physicians for episodes of arthritis and acute gout, frequent headaches, and recurrent cysts in his ears.

In 1989, plaintiff applied for disability insurance benefits under the Social Security Act because of his Crohn's disease, chronic arthritis, and gout. His request for benefits was denied and a series of hearings ensued.

The evidence included various medical records including a number of letters written by plaintiff's treating physicians. For instance, an April 17, 1990 letter from Doctor Kaufman stated:

> In my best medical opinion, I hereby state that, since my report of October 3, 1989 the condition of the above-named pa-tient/claimant remains unchanged, he is still disabled : . . . .

Record at 316.

A February 9, 1990 letter from Doctor Richard Robbins, who treated plaintiff for cysts in his ears, explained:

> Mr. Harris has a chronic illness and with his Crohn's disease would not be able to tolerate the stressors of a work environment. His symptoms will last for at least a year and as his problems are ongoing, he needs constant treatment. As he has bouts of diarrhea almost daily and his problems keep coming back, he would not be a reliable candidate for gainful employment.

Record at 315.

In addition, Doctor Ralph S. Bell, who examined plaintiff for treatment because of "recurrent diarrhea, difficulty absorbing vitamin B–12, abdominal pain, cramps, nausea, and polyps in his left ear," wrote a letter on October 30, 1990 that stated:

> Since the symptoms of Mr. Harris' illness are recurrent, and have been for several years, he would be an [unlikely] candidate for a work environment. Due to the seriousness of his present condition, he requires constant treatment and regular check ups.

Record at 319.

Reports from Doctor Hyman Miller, who examined plaintiff on behalf of the Social Security Administration, were also part of the record. This doctor was of the opinion that plaintiff's ability to lift and carry were impaired by his frequent diarrhea episodes. In addition, the doctor's records stated that plaintiff could stand and walk for a total of four hours a day, depending, however, on the number of bowel movements he experienced. Doctor Miller expressed doubt about the credibility of plaintiff's reported bowel movements.

Testimony was also presented by Doctor Theodore Cohen for the Commissioner. After reviewing the records relating to plaintiff, it was his opinion that while plaintiff did have Crohn's disease, he could do light work and that his impairment did not meet or equal

any provided in the Code of Federal Regulations' Listing of Impairments.

Plaintiff testified. He explained that he had uncontrollable bowel movements many times a day that made even traveling to work by public transportation, which he would be forced to use, impossible. He recounted a loss in strength and a fluctuation in his weight because of his illness.

On June 27, 1991, an Administrative Law Judge found that plaintiff could not perform his past relevant work. The ALJ held, however, that the claimant was not disabled because he could perform a full range of sedentary activity. Sedentary work is the type that:

> involves lifting no more than 10 pounds at a time and occasionally lifting articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); *see also* Don C. Keenan and Charles R. Ashman, *Social Security Disability Claims Practice and Procedure* § 2–10 at 41–42 (Patricia A. Lucas ed., 1983)(hereinafter *Claims Practice* ).

Plaintiff appealed to this court. On appeal the case was remanded for vocational expert testimony on the issue of whether plaintiff's medical problems would interfere with his ability to perform sedentary work available in the economy.

The case was assigned to another ALJ. After another set of hearings, which included testimony from a vocational specialist who stated that if plaintiff had more than five bowel movements on a work day he would be unemployable, the ALJ determined on October 27, 1997 that plaintiff's "residual functional capacity for the full range of 'light' work is reduced by . . . environmental factors . . . [but] claimant's capacity for light work has not been significantly compromised by this exertional limitations, per vocational expert testimony." Record at 380–81. He found that plaintiff was not disabled and had the capacity to engage in light work. Light work:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a a job is in this category when it requires a good deal of walking or standing, or when it involves some sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); *see also Claims Practice* § 2–10 at 42.

Plaintiff again appealed to this court. The Commissioner's decision was reversed and remanded for the calculation of benefits and a periodic review of plaintiff's disability status.

It is from this decision that the Commissioner seeks relief, claiming "the Court did not state any basis for determining that substantial evidence in the record did not support the Commissioner's decision . . . ." Gov't Motion at 2. Specifically, the Commissioner requests that the court "vacate its order and affirm her decision to deny benefits . . . [or] [i]n the alternative . . . set forth the basis of its determination that plaintiff is disabled so that the Commissioner may properly conduct the Court's ordered continuing disability review." Gov't Motion at 5.

### III. *Law*

#### A. *Social Security Disability Insurance Claims*

To obtain Social Security disability insurance benefits, it must be shown that the claimant is disabled. Disability is defined under the Social Security Act as (1) blindness or (2):

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impair-

ment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A),(B). When a claimant "furnishes such medical and other evidence of the existence" of a disability as the Commissioner may require, he will be considered for benefits. 42 U.S.C. § 423(d)(5)(A). A claimant will only be considered to be under a disability when:

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

A five-step process is utilized in determining disability. *See Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). In the first four steps the claimant bears the burden of "showing that his impairment prevents him from returning to his prior type of work." *Berry,* 675 F.2d. at 467. If the fifth step is reached, it is the Commissioner's burden to show that there exists alternative gainful employment in the national economy that the claimant could perform given his impairments. *Berry,* 675 F.2d at 467. If the Commissioner can not show that there are other jobs that the claimant could do, she has failed to meet her burden and the claimant is considered disabled.

A claimant denied disability insurance benefits may seek review of the decision in federal court. 42 U.S.C. § 405(g). In reviewing such decisions, United States district courts "have power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When no legal error has been committed and there is substantial evidence in the record supporting the administrative decision, the Commissioner's

findings of fact are conclusive. 42 U.S.C. § 405(g); *Berry,* 675 F.2d at 467.

The decision-making processes in Social Security disability cases are controlled by the multitude of regulations issued by the Commissioner. 42 U.S.C. § 405(a)(authorization to "adopt reasonable and proper rules and regulations ... furnishing the same in order to establish the right to benefits ..."). One of the basic tenets of Social Security disability proceedings is the "treating physician rule." *See* 20 C.F.R. § 404.1527(d).

The treating physician rule has undergone a number of changes in recent years. *See, e.g., Schisler v. Sullivan,* 3 F.3d 563 (2d Cir.1993)(Secretary of Health and Human Services issued regulations on the treating physician rule in 1991 which were in conflict with the Second Circuit's treating physician rule); *see also Hidalgo v. Bowen,* 822 F.2d 294 (2d Cir.1987)(history of Social Security Administration's failure to follow the Second Circuit's treating physician rule). This Circuit now acknowledges that present regulations regarding the weight to be given to treating physicians is binding upon the Commissioner and federal courts. *Schisler,* 3 F.3d at 568.

The regulation conveys the importance and unique nature of the physician-patient relationship:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings along or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). Because of the special role of the treating professional, the regulation further explains:

If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(d)(2).

An ALJ who does not give the treating physician's opinion sufficient weight is required to give "good reasons" for failing to do so in his notice of determination or written decision. 20 C.F.R. § 404.1527(d)(2); *see also Watson v. Callahan*, 1997 WL 746455, at *11–12 (S.D.N.Y. Dec.2, 1997)(explanation must be given when treating doctor's diagnosis is not given controlling weight). When these rules are not followed, the decision of the ALJ is undermined. *See, e.g., Filocomo v. Chater*, 944 F.Supp. 165 (E.D.N.Y.1996).

B. *Federal Rule of Civil Procedure 60(b)(1)*

Federal Rule of Civil Procedure 60(b)(1) provides that:

> [o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . .

Relief should not be granted under the rule if a motion is made "merely because a party is unhappy with the judgment." 11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2857, at 254 (1995).

IV. *Application of Law to Facts*

The treating physician rule has not been properly applied by the Commissioner. The October 27, 1994 decision by the ALJ states that "Dr. Kaufman's statement of 'disability' in April, 1990 appears unsupported" based upon the doctor's "previous generally positive statements and opinions." Record at 375. Diagnosis and prognosis by a treating physician may not be brushed aside so easily. More weight should have been given to Doctor Kaufman's assessment of disability which was supported by a full medical history.

The ALJ's findings in the decision make no reference to the opinion of plaintiff's treating physicians. Rather, the findings state:

> Claimant's subjective complaints are not supported by the objective medical evidence of record or the treatment rendered, and are not found credible to the extent alleged.

Record at 380. This statement, too, is in discord with the opinion rendered by the treating physician as well as with the extensive medical evidence of tests provided by the many other doctors who saw plaintiff over the years.

Giving appropriate weight to the diagnoses of plaintiff's treating physicians, it is apparent that a finding that defendant could participate in light or sedentary work is without foundation. No evidence has been submitted to or by the ALJ suggesting that any employer could employ in a factory or office a person spending, as would this plaintiff, most of his time in the restroom.

It is because of the ALJ's failure to appropriately weigh the medical opinion of plaintiff's treating source and the overwhelming evidence of disability that the decision of the Social Security Administration was set aside and the case remanded for calculation of benefits and continued assessment of disability.

V. *The Disabled, Work at Home, the SSA, and the ADA*

It is well recognized that labor is one of the activities that make "it possible to have our lives matter, to use our energy in ways that change our environment, and to express our uniquely human capacity to transform the world." Hunter College Women's Studies Collective, *Women's Realities, Women's Choices* 480 (1983); Milton Meltzer, *Poverty in America* 34–35 (1986) (being without a job "can do great damage to the self-respect of the person"); Bryce Nelson, *Despair Among Jobless is on Rise*, N.Y. Times, Apr. 2, 1983, at 25 ("economic and job loss can be linked directly to a greater incidence of psychological depression among individuals" and can lead to a parent feeling humiliated). *But see* Note, *Finding a Place for the Jobless in Discrimination Theory*, 110 Harv. L.Rev. 1609 (1997) (jobless face discrimination based upon American preoccupation with productivity and work).

Plaintiff is clearly a sick young man suffering from a serious affliction. A pyrrhic victory over the Commissioner, however, may well lead to future frustration, with deleterious consequences for the claimant. The prior ALJ decisions in this case, while not legally supportable, may have been shaped by this concern for the claimant's long-term welfare.

In today's world, there may be tasks essential to our economy that a disabled person such as plaintiff could do for pay in his own home—Internet researching, telemarketing, copy editing, data entry, and the like. *See, e.g.,* Caryn Eve Murray, *Charting a New Course: Disabled Overcome Obstacles to Become Entrepreneurs,* Newsday, Aug. 18, 1997, at C–6; Jacqueline Shaleen, *Disabled Finding Wider Job Opportunities,* N.Y. Times, July 9, 1989, Section 12NJ, at 1 (hereinafter *Wider Opportunities* ). These possibilities were not meaningfully considered by the ALJ or the vocational expert.

"Home work" as an alternative appears to be currently under-utilized by our society. First, the present Social Security claims system does not appear to fully take into account the sorts of jobs that do not require a personal appearance outside the home. Second, governmental and non-governmental entities may not be assisting the disabled in finding such employment. Third, private employers may not be fully accessing the rich resource of home-bound persons seeking employment. Finally, some disabled individuals may too easily overlook these situations as viable alternatives. *See Wider Opportunities* at 1 (some disabled persons find reentering the workforce daunting and fear losing disability benefits).

Another perspective has been added to this picture by the Americans with Disabilities Act, 42 U.S.C. §§ 1201–12213. Under the ADA, workplaces with fifteen or more persons are required to make reasonable accommodations for otherwise qualified employees who have disabilities. 42 U.S.C. § 12112(b)(5). A reasonable accommodation is one that can be made without "undue hardship" to the employer, but that assists a disabled person to fulfill employment obligations. 42 U.S.C. § 12111(9), (10). A person is considered a qualified individual with a

disability if he or she can perform the "essential functions" of a job, either with or without accommodation. 42 U.S.C. § 12111(8). When employers fail to make reasonable accommodations for qualified disabled employees, a cause of action for discrimination may lie. 42 U.S.C. § 12112.

Because of the interpretation many courts have given to the ADA in conjunction with SSA, disabled employees seeking accommodations so that they can return to work may be precluded from doing so if they previously requested disability insurance compensation on the ground that they were unemployable. One trend that appears to be emerging: once a person asserts in the Social Security disability context "permanent disability," he or she is precluded or estopped from being considered "qualified" for purposes of the ADA. *See, e.g., Budd v. ADT Sec. Sys., Inc.,* 103 F.3d 699, 700 (8th Cir.1996); *McNemar v. Disney Store, Inc.,* 91 F.3d 610, 618 (3d Cir.1996); *Griffith v. Wal–Mart Stores, Inc.,* 930 F.Supp. 1167, 1173–74 (E.D.Ky.1996); *Taylor v. Food World, Inc.,* 946 F.Supp. 937, 942 (N.D.Ala.1997); *Smith v. Midland Brake, Inc.,* 911 F.Supp. 1351, 1362–63 (D.Kan.1995); *see also Cleveland v. Policy Management Sys. Corp.,* 120 F.3d 513, 518 (5th Cir.1997)(rebuttable presumption created against validity of ADA claim when claimant has previously applied for or received Social Security benefits).

The law is in a state of flux. *See, e.g., Swanks v. Washington Met. Area Transit Auth.,* 116 F.3d 582, 586–87 (D.C.Cir.1997)(declining to adopt *per se* estoppel rule in ADA/Social Security Act cases since "[f]orcing such a choice would undermine the pro-employment and anti-discrimination purposes of the two statutes"); *Smith v. Dovenmuehle Mortg., Inc.,* 859 F.Supp. 1138, 1141–42 (N.D.Ill.1994)(a finding of disability by the Social Security Administration not a bar to suits under the ADA's precursor, the Rehabilitation Act of 1973). *Cf. Simon v. Safelite Glass Corp.,* 128 F.3d 68, 73–74 (2d Cir.1997)(person claiming to be disabled for purposes of obtaining Social Security disability benefits estopped from claiming he was not disabled under the Age Discrimination Act; court did not reach the issue of a person attempting to bring suit under the Americans with Disabilities Act).

Full integration of these two sets of laws—the SSA and the ADA—has not yet occurred. *See* Matthew Diller, *Dissonant Disability Policies: The Tensions Between the Americans With Disabilities Act and Federal Disability Benefit Program,* 73 Tex. L.Rev. (forthcoming Apr. 1998)("measures should be taken to make the two programs work better together"); *see also* Thomas D. Edmondson, *Parallel Claims for Disability Benefits, ADA Relief Create Welter of Different Rules,* 66 U.S.L.W 2419, 2419–20 (Jan. 20, 1998). Both were created to protect the rights of those with disabilities. Yet one, unfortunately, may cancel the beneficial effects of the other.

Many with disabilities may now view themselves as being in a "catch–22" situation. Their "application for or receipt of disability benefits in a prior proceeding may operate as a complete defense for the employer in a subsequent ADA action." Marney Collins Sims, Comment, *Estop it! Judicial Estoppel and Its Use In Americans With Disabilities Act Litigation,* 34 Hous. L.Rev. 843, 844 (1997). *See generally,* Wendy Wilkinson, *Judicially Crafted Barriers to Bringing Suit Under the Americans With Disabilities Act,* 38 S. Tex. L.Rev. 907 (1997); Andrea Christensen Luby, Note, *Estopping Enforcement of the Americans With Disabilities Act,* 13 J.L. & Pol. 415 (1997).

These matters will have to be considered in future cases. The issue seems best approached by Congressional action as well as by the private initiative of employers and rehabilitation agencies. At this time, given the present state of the law, there is no reason not to find for plaintiff.

## VI. *Conclusion*

Defendant's motion for relief under Rule 60(b)(2) is denied. This case is remanded to the Commissioner of Social Security for the computation of benefits and, within her discretion, for continued review of plaintiff's disability status.

So Ordered.